## 6696.  NEIDLINGER *v.* THE STATE.

1. Statutes should be so construed as to maintain, if possible, their validity.  It is essential to the validity of the act of 1914 penalizing the drawing and uttering of worthless checks, drafts, or orders (Acts 1914, p. 86, Park's Annotated Code, vol. 6, § 718 (d) ), that it be construed as applying only where there is a fraudulent intent on the part of the drawer.  To construe it otherwise would be to declare it an instrument for the collection of debt by the processes of the criminal law, in contravention of sound public policy and of the constitution of the State.

2. In the passage of the "worthless-check act," supra, the General Assembly properly intended to penalize the drawing and uttering of a check, draft, or order when the drawee accepts it with good reason to believe that the drawer actually has, in the hands of the drawee, sufficient funds to meet it.  The statute was not intended to cover a post-dated check accepted by the payee with distinct knowledge that the paper constitutes nothing more than a promise that, on the future date specified as the day of payment, the drawer will have in the bank the funds necessary to meet the check.  In drawing a post-dated check there is either an implication that the payment is not to be finally consummated until the date named therein, or an implication that payment is postponed because the drawer has not, at the time of drawing the check, sufficient funds to meet it.  In either event a post-dated check is merely a promise to pay in the future, and a breach of this promise would not subject the drawer of the check to the penalty of the act of 1914, although

he might be guilty of cheating and swindling if he obtained money or other things of value by false and fraudulent statements, either in connection with or disconnected from the drawing of the check.

3. Even if the evidence in the present case would have authorized conviction upon a proper accusation of cheating and swindling, it was wholly insufficient to warrant a conviction of the specific offense of issuing a worthless check.

DECIDED APRIL 20, 1916.

Accusation of misdemeanor; from city court of Springfield—Judge Shearouse. May 13, 1915.

*J. H. Smith,* for plaintiff in error.

*D. G. Heidt Jr.,* solicitor, contra.

RUSSELL, C. J.   The accused was convicted of a violation of what is commonly known as the "worthless-check act" of 1914 (Acts 1914, p. 86; Park's Annotated Code, vol. 6, § 718 (d) ). The statute declares that "any person who shall draw and utter any check, draft, or order for present consideration upon a bank, person, firm or corporation with which such drawer has not at the time sufficient funds to meet such check, draft, or order, and shall thereby obtain from another money or other thing of value, or induce such person to postpone any remedy he may have against such drawer, shall be guilty of a misdemeanor, and upon conviction shall be punished as prescribed in section 1065 of this Code; provided, that if such drawer shall deposit with such drawee of such paper, within thirty days thereafter, funds sufficient to meet such check, draft, or order together with interest which may have accrued, there shall be no prosecution under the provisions of this act." The evidence shows that the prosecutor, Hester, in November, 1914, lent the defendant $10, taking a mortgage upon a cow as security. About two weeks later the defendant went to Hester with a check for $18, drawn by B. J. Reese and payable to the defendant, and wanted the prosecutor to cash it and take out the $10 he had previously advanced the defendant. The prosecutor cashed the check and gave the defendant the difference. The prosecutor then sent the check to the bank at Guyton on which it was drawn, and it was returned to him unpaid, payment having been stopped by the drawer. The prosecutor then went to the defendant and told him the check was "no good," and the defendant promised to make it good by paying him back the money. From time to time the prosecutor asked the defendant for the money, and, as related by the prosecutor, he always promised to pay the prosecutor back, but "never had the

money to do so." According to the prosecutor's testimony, he approached the defendant "some time in February," 1915, and asked when he was going to pay him, and the defendant replied that he would give the prosecutor his own check in exchange for Reese's check; and he did give the prosecutor his check on the Exchange Bank of Springfield, for the amount due, but post-dated it (the date of the check being about February 20th), and received the Reese check. The check then given by the defendant was held by the prosecutor until the day named therein as its date, and on that day was presented to the bank on which it was drawn, and payment was refused. The check was left at the bank for thirty days thereafter, and has never been paid. The prosecutor admitted that the Reese check had been returned to him by Neidlinger.

The defendant's statement at the trial did not differ materially from the testimony of the prosecutor, though the defendant stated that he expressly told the prosecutor, at the time the prosecutor asked him for the check which is the basis of the prosecution, that he did not have any money in the bank to check on, and that the prosecutor stated to him that it would be all right for him "to date the check ahead and give it to him," and he (the prosecutor) would then have a showing for what the defendant owed him; that he wanted a check or a note to show that the defendant owed him; and "I could give him the check and date it ahead and he would hold that, and agreed that if I did not have any money in the bank when it came due, he would hold it." The defendant, according to his statement, further told the prosecutor that he might not be able to have the money in the bank to meet the check, and the prosecutor said he would hold it, as he wanted it only as a showing that the defendant owed him. The prosecutor did not take the stand to deny the statement of the defendant as to the expressed intent with which the check was given, and the statement upon this point, though explanatory of the defendant's intent, is not in conflict with any evidence introduced by the prosecution. The testimony of the prosecutor as to the giving of the post-dated check in payment of the past-due check of Reese which had not been paid was the only material evidence in the case, except the testimony of the State's counsel, Mr. Heidt, who testified that he knew that "the defendant collected the money for the check from Reese that he traded to Hester, and that was the reason it was not paid at the bank."

According to the solicitor's testimony, the defendant collected the amount due on Reese's check before he traded it to Hester, and it was for that reason that Hester stopped payment at the bank; and as the defendant knew, at the time he paid his mortgage of $10 to Hester and obtained the remainder of the amount of the Reese check in cash, that he had received already from Reese the amount specified in the check and in settlement thereof, he might have been convicted of cheating and swindling by deceitful means and artful practices, under section 719 of the Penal Code, if charged therewith. However, upon the charge made in the accusation now before us, we deem the evidence insufficient to authorize conviction. Statutes imposing criminal liability are to be construed strictly; and although there is not, in the act of 1914, supra, an express statement that its provisions as to the drawing and uttering of checks and other papers therein mentioned are confined to and refer only to such papers as are drawn or uttered with intent to defraud, it is plain that such fraudulent intent must exist and be operative before the drawing or uttering of the papers named in the statute would be criminal. The concept of a fraudulent intent must be read into the statute; otherwise the law would contravene the general provision that, to constitute crime, intent must concur with the act. Penal Code, § 31. Furthermore, the statute now under consideration penalizes conduct somewhat similar to forms of cheating and swindling previously denounced by law, and it is to be assumed that the essential elements of the crime partake of the same general characteristics. Otherwise the act would be in effect nothing more than a means of enforcing promises and other civil obligations, and of collecting debts by the processes of the criminal law; which is utterly abhorrent to public policy as announced by the courts and as embodied in the constitution of our State (article 1, paragraph 21; Civil Code, § 6377). It is very plain to our mind that in the passage of the act in question the intention of the legislature was that the drawing and uttering of drafts, checks, and orders should be penalized thereby only when the drawer did not have sufficient funds to meet the check, draft, or order at the time it was drawn, and where the person parting with money or other thing of value thereon, or induced thereby to postpone any remedy he might have against the drawer, did so in the belief that the drawer actually had at the time suffi-

cient funds to meet such .check, draft, or order.   The act was not intended to cover post-dated checks accepted by the payee, the .contents of which apprise him that the paper constitutes nothing more than a promise that the drawer will have the funds necessary to meet the check on the date specified as the day of payment.   In drawing a post-dated check there is an implication either that there is no present consideration (as where a trade is not to be finally consummated until the day named in the check), or an implication that payment is postponed because the drawer has not, at the time the check is drawn, sufficient funds to meet it.   In either event the check is merely a promise to pay in the future.   One who knowingly takes a post-dated check, under the circumstances stated by the prosecutor in this case, and exchanges an article of value therefor, makes the exchange not upon his faith that the drawer has at the time sufficient funds to meet the check, but upon his willingness to risk the ability of the drawer to make a deposit and to have in bank, on or after the date mentioned in the check, sufficient funds with which to comply with his obligation.   Of course, if the acceptance of the post-dated check is induced by an antecedent or contemporaneous false pretense or false representation of a past or present pretended fact or condition, the transaction might be so tinctured with an intent to defraud that the drawer would be guilty of cheating and swindling.   See *Holton* v. *State,* 109 *Ga.* 127 (34 S. E. 358) ; 2 Bish. New Cr. L. § 421.

The statute now under consideration creates no such rule of presumptive evidence as does the "labor-contract act" of 1903 (Penal Code, § 716).   Therefore it would not do to hold that mere proof that the defendant drew a post-dated check, even though it were for a present consideration, of itself raised a presumption that the defendant entertained an intent to defraud at the time the check was drawn.   The attendant circumstances in a particular case might be such as to authorize the inference that the paper in question was in fact drawn or uttered with intent to defraud, and in such a case, if, by reasons of misrepresentation of any fact, past or present, the drawee of the check was induced to accept it to his injury, the drawer might be guilty of cheating and swindling; but one who draws a post-dated check can not as a matter of law be said to entertain a fraudulent intent, since a post-dated check is one which by its very date informs all takers that the assurance

that the drawer has sufficient funds to meet it is postponed until the specific day named in the check. Especially is this true when the drawer specifically calls the attention of the payee to the fact that payment is to be deferred to a future date, and it is apparent that his promise to meet it depends upon his ability in the future, as well as his future willingness, to comply with that promise. To hold that fraudulent intent is to be presumed where, as in the present case, the prosecution proved nothing more than that the defendant drew a post-dated check, even though it were for a present consideration, which the payee accepted with full knowledge that the drawer had no funds to meet it, would be holding that an intent to defraud may be presumed from a mere failure to comply with a promise to perform in the future. So to hold would be to render unconstitutional and void an act which was intended to subserve a useful purpose. In any case in which the circumstances are such as to support no reasonable conclusion other than that a fraudulent intent existed in the mind of the drawer of a check given in violation of the express terms of the statute now under consideration, the accused is liable to the penalty of the act. The legislature may by appropriate legislation create rules of evidence under which natural inferences from certain facts may become presumptions of law; but since, under repeated rulings of the Supreme Court, it is not within the power of the legislature to imply a fraudulent intent from mere non-compliance, or from a refusal to comply, with a promise to be performed in the future, it can not be presumed that the legislature intended, in the passage of the act now in question, to include in the operation of the act post-dated checks, which by their very terms are not payable except on or after a date in the future, and the payment of which at the time specified is subject to contingencies dependent upon the circumstances of the drawer, of which the payee of the check is bound to take notice. If there is one principle which is well-settled in our criminal jurisprudence, it is that the violation of a promise relating to the future (except in the case of the "labor-contract act" heretofore referred to) affords no basis for criminal prosecution. *Ryan* v. *State,* 45 *Ga.* 128; *Miller* v. *State,* 99 *Ga.* 207 (25 S. E. 169); *Edge* v. *State,* 114 *Ga.* 113 (39 S. E. 889); *Oliver* v. *State,* 6 *Ga. App.* 791 (65 S. E. 843); *Meacham* v. *State,* 7 *Ga. App.* 714 (68 S. E. 52); *Foster* v. *State,* 8 *Ga. App.* 119 (68

S. E. 739). Since there is no conflict in the evidence, the question of the defendant's guilt becomes a question of law; and for the reason stated the trial judge erred in refusing a new trial.

*Judgment reversed. Broyles, J., dissents.*