THE STATE, DEFENDANT IN ERROR v. JOSEPH BARONE, PLAINTIFF IN ERROR.

Submitted July 6, 1922—Decided November 20, 1922.

The giving of a post-dated check carries with it no implication that the drawer has funds on deposit in the bank upon which it is drawn sufficient to meet it upon its presentation for payment, and does not bring the maker within the condemnation of *Pamph. L.* 1919, *p.* 133, which makes it a misdemeanor for any person, with intent to defraud, to issue a check or draft, knowing at the time of the issuance thereof that he has not funds to meet the same in the depository upon which it is drawn.

On error to the Somerset County Court of Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and TRENCHARD.

For the plaintiff in error, *William A. Lord.*

For the state, *Azariah M. Beekman,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.  The writ of error in this case brings up a conviction had against the defendant in the Somerset Quarter Sessions upon an indictment which charged that he, on the 5th day of May, 1921, with intent to defraud, did make and deliver to the order of Halsey's garage a check for $150, bearing date on the said 5th day of May, knowing at the time of the making and delivery of the check that he had not sufficient funds in or credit with the bank on which it was drawn with which to pay the check upon its presentation.  The indictment charges the statutory offence declared in section 1 of the supplement to our Criminal Procedure act, passed April 10th, 1919 (*Pamph L., p.* 133), which provides that "any person who, with intent to defraud, shall make or draw, or utter or deliver. any check, draft or order for the payment of money upon any bank or other depositary, knowing at the time of such making, uttering or delivering that the maker, or drawer, has not sufficient funds in, or credit with, such bank or other depositary for the payment of such check, draft or order, in full upon its presentation, shall be guilty of a misdemeanor."

The legislative purpose to be gathered from the language of this section of the statute seems to us to be plain, and that is, to make criminal the fraudulent giving of a check which is immediately payable, the maker knowing when he delivers it that he has not sufficient funds in the bank upon which it is drawn out of which it can be paid.  And this purpose is made

clear—if the first section of the supplement leaves it at all in doubt—by section 2 thereof, which declares that, as against the maker of the check, the refusal of payment by the bank shall be *prima facie* evidence of intent to defraud.

The charge laid in the indictment was that made criminal by the statute, as we construe it, viz., the giving of a check immediately payable, drawn upon a bank in which the maker had not sufficient funds on deposit with which to meet it. The proofs submitted on the part of the state, however, conspicuously failed to support that charge. The situation disclosed by the evidence was that on the 1st day of May, 1921, the Halsey garage sold either to the defendant or a friend of his (the identity of the purchaser being left somewhat in doubt) a second-hand automobile for $600; that the car was delivered to the purchaser at the time of the sale; and that in part payment of the purchase price the defendant gave to the Halsey garage his check for $150, post-dated on the 5th of May, because of the fact that the defendant then had no funds in the bank upon which it was drawn, and that he informed the manager of the Halsey garage of this fact when the check was delivered. No attempt was made to prove that at the time of the delivery of the check any promise or representation was made by the defendant, other than the mere giving of the check, that on the day of its date he would have funds on deposit in the bank sufficient in amount to satisfy it; nor was there even a suggestion in the evidence that the payee had been induced to accept the check by reason of any express representation with relation to it which was made by the defendant.

From this collation of the facts submitted, it is clear that the transaction proved is essentially variant from that laid in the indictment, and it would seem that this alone is sufficient to set aside the conviction now before us, for, as was said in *State* v. *Riley,* 65 *N. J. L.* 624, "evidence not within the allegations of the indictment is incompetent to induce a conviction." But, as this phase of the case has not been considered by counsel either for the defence or for the state, we

prefer to base our conclusion in this case upon the determination of the question whether the mere fact that a person gives for a valuable consideration a post-dated check upon a bank in which he has no deposit with which to meet it when the due date arrives brings him within the condemnation of the statute even if our construction thereof be too narrow. We think that it does not. The giving of a check presently payable is an implied representation by the drawer that he then has funds on deposit in the bank upon which it is drawn sufficient to meet it upon its presentation for payment. The giving of a post-dated check carries with it no such implication, but rather the contrary. It is a mere promise to discharge a present obligation on a future day. And the fact of its non-payment when the due date arrives—without more— is no more evidence that it was given with fraudulent intent than is the permitting of a promissory note to go to protest proof of such intent, or the failure to pay the purchase price of goods sold on credit, standing alone, evidence of fraud in the making of the contract. Fraud is never presumed, but must always be proved, and an intent to defraud cannot be predicated solely upon the mere nonperformance of a future promise. The citation of authority in support of such a proposition is unnecessary. Its application under facts similar to those presented in the present case led to a reversal of a conviction in *Brown* v. *State,* 166 *Ind.* 85, and in *State* v. *Winter,* 98 *S. C.* 294.

For the reason indicated, we consider that the application of the defendant for the direction of a verdict at the close of the state's case should have been granted, and that its refusal requires a reversal of the conviction.