STATE *v.* JOHNSON.

(In Banc. May 2, 1932.)

[141 So. 338. No. 29842.]

W. D. Conn, Jr., Assistant Attorney-General, for the state.

523

Taylor McElroy, of Oxford, for appellee.

Argued orally by **Taylor McElroy**, for appellee, and W. **D. Conn, Jr.**, for state.

**Cook, J.**, delivered the opinion of the court.

T. E. Johnson was convicted in the circuit court of Lafayette county of passing a worthless check; the in-

dictment being drawn under chapter 172, Laws 1924, sections 924 and 925, Code 1930. On appeal to this court, the constitutionality of the said chapter 172, Laws of 1924, was challenged, but the court expressly declined to pass upon that question. The judgment of the court below was reversed, 159 Miss. 703, 132 So. 330, on account of the failure to give the accused written notice of the nonpayment of the check, as required by section 924, Code 1930. Upon remand of the cause, a demurrer was interposed to the indictment; the sole ground thereof being that the said chapter 172, Laws 1924, is invalid, for the reason that it is in violation of section 30 of the Constitution of 1890, which provides that: "There shall be no imprisonment for debt." The demurrer was sustained, and, from the judgment entered sustaining the demurrer and discharging the defendant, the state appealed.

The only question presented for decision by this appeal is whether or not chapter 172, Laws 1924, violates the constitutional prohibition against imprisonment for debt; and a decision of this question makes necessary a comparison of the existing statutory provisions covering the subject of worthless checks. Section 3 of chapter 172, Laws 1924, provides that said chapter is cumulative and is not intended to repeal chapter 120, Laws 1916 (section 923, Code 1930), or any other law on the subject. Chapter 120, Laws 1916, section 923, Code 1930, reads as follows:

"Any person, acting for himself or another, who with intent to defraud shall obtain money, credit, goods, wares, or anything of value by means of making or drawing, or uttering or delivering any check, draft or order for the payment of money upon any bank or other depository, knowing at the time of making or drawing such check, draft or order, or of the uttering or delivering of same, that he has not sufficient funds in or credit with such bank or other depository for the payment of such

check, drafts or order in full, upon its presentation, provided that all such checks, drafts or orders shall be presented by the payee or assignee thereof to such bank or depository for payment within thirty days from the date of said check, draft or order, shall be guilty of a misdemeanor, if the amount of such check, draft or order be under twenty-five dollars, and he shall be guilty of a felony if the amount of such check, draft or order be twenty-five dollars or more, and upon conviction thereof shall be punished as in other cases for obtaining money, or goods under false pretenses. The failure of the person, drawing, uttering or delivering such check, draft or order to pay or have paid the amount of same within ten days after receipt by him of written notice of its nonpayment upon presentation, shall be prima facie evidence of obtaining the amount of said check, draft or order, or of the goods or other property obtained by the giving of said check, draft or order by the person giving or drawing or uttering same, under false pretenses, within the meaning of this section and mailing, postpaid, to the post-office address of the maker, drawer or utterer of such check, draft or order, shall be prima facie evidence of the receipt of such notice. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or other depository for the payment of such check, draft or order.''

It will be noted that this statute, which by express legislative declaration was not modified or repealed by the later enactment, makes an ''intent to defraud,'' and knowledge by the maker or drawer of the check at the time of making, drawing, or uttering the same that he has not sufficient funds in or credit with the bank to pay the check are made essential elements of the crime denounced; while chapter 172, Laws 1924, omits entirely any requirement of an intent to defraud, or knowledge on the part of the drawer that he has insufficient funds

in the bank to meet the check. Section 1 of the latter act, section 924, Code 1930, reads as follows:

"If any person shall make, issue and deliver to another person, for value any check, draft or order on any bank or other depository and thereby obtain from such other person any credit, money, goods or other property of value, and have no funds, or have insufficient funds, on deposit to his credit in said bank or depository with which such check, draft, or order may be paid, or who, after having made, issued, uttered or delivered any check or draft or other order for the payment of money upon any bank or other depository shall withdraw or cause to be withdrawn, the money or any part thereof, to the credit of the maker of such draft, check or other order for the payment of money without leaving with such bank or other depository a sufficient sum to cover such check, draft or other order for the payment of money, and same shall not be paid by such bank or depository on presentation, he shall be guilty of a misdemeanor, if the amount of the check, draft or order be under twenty-five dollars, and upon conviction thereof, he shall be fined not less than the amount of such check, draft or order and not exceeding one hundred dollars, or imprisoned in the county jail not less than one day nor more than thirty days, or both such fine and imprisonment, at the discretion of the court; and if the amount of the check, draft or order shall be twenty-five dollars or more, he shall be guilty of a felony and on conviction shall be imprisoned in the penitentiary not less than six months nor more than two years, and the drawer of such check, draft or order shall be prosecuted in the county in which he delivered the same, or in the county of the bank or depository on which it was drawn, wherever prosecution may be first begun.

"Prosecution under this section may be begun immediately, but if the person who makes, issues and delivers any such check, draft or order shall, within ten days

from the time he receives written notice of the nonpayment of such check, draft or order, pay the same, together with all lawful protest fees, interest and damages, if any, he shall not be prosecuted under this section and any prosecution that may have been begun within the time above mentioned shall, if payment of such check, draft or order, protest fees, interest and damages, if any, be made as aforesaid, be dismissed on payment of the costs of prosecution by defendant. Said written notice may be given by said bank or other depository or by the payee or drawee in said check, draft or order, or by any officer who shall protest same. And the mailing, postpaid to the last known post-office address of the maker, or drawer of such check, draft or order, shall be prima facie evidence of the receipt of such notice.''

In view of the fact that the legislature expressly declared that chapter 120, Laws 1916, was not repealed by the later act attempting to create and define a new crime by declaring that the issuance and delivery of the check under the circumstances therein set out should be a crime, regardless of intent to defraud and knowledge on the part of the maker or drawer, we cannot read into the act a fraudulent intent, as was done in the case of Neidlinger v. State, 17 Ga. App. 811, 88 S. E. 687, 688, wherein the court of appeals of Georgia had under consideration a worthless check act (Georgia Laws 1914, p. 86) which did not make the existence of a fraudulent intent an essential element of the crime denounced. In that case the Georgia court of appeals declared that: ''It is plain that such fraudulent intent must exist and be operative before the drawing or uttering of the papers named in the statute would be criminal. The concept of a fraudulent intent must be read into the statute; otherwise, the law would be in contravention of the general provision that, to constitute crime, intent must concur with the act.'' And in justification of this construction the court further said: ''Otherwise, the act would be in ef-

fect nothing more than a means of enforcing promises and other civil obligations, and of collecting debts by the processes of the criminal law—which is utterly abhorrent to our public policy as announced by the courts and as embodied in the constitution of our state.''

Since it is not permissible to so interpret the act under consideration as to violate the manifest purpose and intent of the legislature, as it appears from the terms of the statute, by reading into the statute as elements of the offense created and defined thereby, an intent to defraud, and knowledge on the part of the maker or drawer at the time the check is drawn and delivered, that he has insufficient funds on deposit to pay it, we must consider the act in question as one making the offense complete upon the issuance and delivery of a check under the circumstances set out therein, without regard to any intent on the part of the maker to defraud the payee, or knowledge on his part that he has insufficient funds on deposit to pay the check. It is undoubtedly true that in the exercise of its police power the legislature may prohibit an act, and make its commission a crime, which involves neither moral turpitude nor evil intent, unless so to do violates some constitutional prohibition or invades the rights guaranteed the citizen by the Constitution. But, where the enforcement of a statute making an act criminal which was before innocent necessarily results in the violation of a constitutional prohibition, or in the invasion of rights guaranteed the citizen by the Constitution, the statute must fail.

Under the act here involved, section 924, Code 1930, any person who ''shall make, issue and deliver to another person, for value any check, draft or order on any bank or other depository and thereby obtain from such other person any credit, money, goods or other property of value, and have no funds, or have insufficient funds, on deposit to his credit in said bank or depository with which such check, draft, or order may be paid, or who,

after having made, issued, uttered or delivered any check or draft or other order for the payment of money upon any bank or other depository shall withdraw or cause to be withdrawn, the money or any part thereof, to the credit of the maker of such draft, check or other order for the payment of money without leaving with such bank or other depository a sufficient sum to cover such check, draft or other order for the payment of money, and same shall not be paid by such bank or depository on presentation," shall be guilty of a misdemeanor, punishable by fine and imprisonment, if the amount of the check, draft, or order be under twenty-five dollars; and if the amount of the check, draft, or order be twenty-five dollars or more, he shall be guilty of a felony punishable by imprisonment in the state penitentiary not less than six months and not more than two years.

It is further provided by this section that prosecution thereunder may be begun immediately upon the dishonor of the check or draft, but "if the person who makes, issues and delivers any such check, draft or order shall, within ten days from the time he receives written notice of the nonpayment of such check, draft or order, pay the same, together with all lawful protest fees, interest and damages, if any, he shall not be prosecuted under this section and any prosecution that may have been begun within the time above mentioned shall, if payment of such check, draft or order, protest fees, interest and damages, if any, be made as aforesaid, be dismissed on payment of the costs of prosecution by defendant."

On the former appeal of this cause, it was held that the giving of the notice above referred to is mandatory and a necessary prerequisite to any conviction under the statute; and the payment of the dishonored check, and the stated fees and costs, within ten days after the receipt of the notice, is an absolute bar to further prosecution under the statute, and requires the dismissal of any

prosecution, already begun. The first part of the statute declares the issuance and delivery of a check under the circumstances therein set forth to be a crime, and fixes the punishment that may be imposed upon conviction, and authorizes the immediate institution of a prosecution therefor and the arrest of the maker or drawer of the draft; while the second paragraph of this section requires that the accused shall be notified in writing of the dishonor of the check, and provides that if, within ten days after the receipt of such notice, he pay the debt created by the issuance and delivery of the check, and certain fees and costs, there shall be no prosecution for the offense created and defined in the first paragraph, or, if prosecution has already been begun, it shall be dismissed.

There is no pretense of punishing the maker or drawer of the check if the notice required by the statute shall have the desired effect of extorting from him the money he owes. In fact, if he pay in response to the notice, further prosecution is prohibited, while, if he fails to pay the debt, he may be imprisoned; and, if the amount of the check is twenty-five dollars or more, this imprisonment must be in the penitentiary, and may be for as much as two years. This latter provision clearly stamps the statute as a debt collecting agency. The doing of the prohibited act is first declared to be a crime punishable by a heavy penalty, but, upon satisfaction being made with the payee by payment of the debt created by the giving of the check, and the accrued fees and costs, the act is purged of all criminality, and prosecution therefor is barred.

The constitutionality of similar statutes has been considered by the courts of several states. In the case of Burnam v. Commonwealth, 228 Ky. 410, 15 S. W. (2d) 256, 258, the supreme court of Kentucky considered the constitutionality of a statute practically identical in its terms and provisions with the one involved herein. The

Constitution of the state of Kentucky has no explicit prohibition of punishment for debt, but, after a full analysis and consideration of the provisions of the statute and the decisions of the courts of other states, the Kentucky court held that, in effect, the statute sanctioned imprisonment for debt, and while strongly intimating that it violated section 25 of the Constitution of Kentucky, which forbids slavery and involuntary servitude, the court expressly held that it violated section 18 of the Constitution of that state, which reads as follows: "The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be prescribed by law."

In discussing the provisions of the act and the effect of the enforcement thereof, the court in the Burnam case, supra, used the following language which is peculiarly applicable here: "The act is a declaration by the commonwealth to one party to a contractual transaction, whereby he had incurred a debt to the other, that unless he pays that debt he shall be arrested, tried, convicted, fined, and imprisoned at hard labor; and this obviously not for any taint of criminality in the transaction out of which the debt arose. For this default, unless it is purged by paying, before conviction, his debt to the prosecuting party, and the accrued costs of putting this coercion upon him, the debtor may be imprisoned. There is no pretense of punishing him for giving the paper if the preliminary notice or demand shall have the desired effect of extorting the money he owes. If this fails he may be branded a felon under the guise of punishing an act which is not criminal and which does not involve abstract criminality or the taint of moral turpitude, and which might up to the very moment of conviction have been shorn of even its factitious criminality by the payment of the obligation."

In the case of State v. Avery, 111 Kan. 588, 207 Pac. 838, 23 A. L. R. 453, the Kansas Worthless Check Act (Laws 1915, chapter 92) was held to be constitutional, but this act expressly provides that the check or draft must be wilfully drawn with knowledge at the time that there were "no funds on deposit in or credits with such bank or depository with which to pay said check or draft upon presentation" (section 1); and further provides by section 3 thereof as follows: "That in any case where a prosecution is begun under this act, the defendant shall have a right, upon application made for that purpose before trial, to have said action abated by showing to the court or judge that he has had an account in said bank upon which said check or draft was drawn, thirty days next prior to the time said check or draft was delivered and that said check or draft was drawn upon said bank without intent to defraud the party receiving the same, and if the court shall so find, said action shall be abated and the defendant shall be discharged upon paying into court the amount of such check and the costs in said case."

In the case of State v. Nelson, 237 N. W. 766, 768, 76 A. L. R. 1226, the South Dakota court had under consideration a statute which was almost an exact copy of the Kansas statute above referred to; and the court criticized the reasoning of the decision in State v. Avery, supra, and definitely disagreed with the conclusion there reached, saying: "We are not able to agree in full with this part of the opinion. . . . And, if the law was intended to obviate the demoralization of business caused by the circulation of worthless checks, then there would have been no occasion for incorporating sections 3 and 5 into the law. North Dakota has a bad check law, so also have many other states, but so far as we are advised all such laws, except those of North Dakota, South Dakota, and Kansas, make moral turpitude in some form an element of the offense. The North Dakota law makes

the issuance of a check against a bank where the maker of the check has not sufficient funds in or credit with such bank to meet the check on presentation a misdemeanor, and the offense is complete as soon as the check is issued. It is not necessary to wait until the check has been presented for payment, and dishonored, before the law applies, and there is no provision in the law whereby, after a prosecution has been instituted, the defendant may pay the face of the check and the costs of prosecution and abate the action. Under this law the penalty provided is for the issuance of the bogus check, and the law is in reality a 'bad check' law. See State v. Schock, 58 N. D. 340, 226 N. W. 525, 72 A. L. R. 888. Under the South Dakota and Kansas laws the provisions of sections 1 and 2 do not apply until the check has been presented for payment and been dishonored, and then, after a prosecution has been instituted, the defendant may pay the check and the costs and thereby abate the action. Under this law the penalty is for failure to pay the check when presented for payment, and for that reason the law is a 'bad debt' or debt collecting law, and violates the provisions of section 15 of article 6 the Constitution, which prohibits imprisonment for debt founded on contract.''

Following the report of this case in 76 A. L. R. 1226, there is an annotation which is supplementary to one in 23 A. L. R. 459, which together exhaustively treat the subject of constitutionality of worthless check acts of the different states, and attention is particularly directed to these annotations for a full analysis of the cases bearing upon the subject.

In the case last above cited, the South Dakota court was considering the constitutionality of the statute as applied to a post dated check, but in the case of State v. Portwood (S. D.), 238 N. W. 879, it was held that the same reasoning applied to a present dated checks as to a post dated check, and that the statute forbidding the

drawing of a check with knowledge that there were insufficient funds on deposit to pay it was unconstitutional, in that it imposed imprisonment for debt founded on contract.

It appears to us that the purpose of chapter 172, Laws 1924, sections 924, 925, Code 1930, is, and certainly its effect is, to use the criminal processes of the court to enforce the collection of debts, and therefore it violates section 30 of the Constitution of 1890 prohibiting imprisonment for debt.

The judgment of the court below sustaining the demurrer to the indictment and discharging the defendant will therefore be affirmed.

Affirmed.