STATE of Missouri (Plaintiff), Respondent,

v.

W. A. BROOKSHIRE (Defendant), Appellant.

No. 30440.

St. Louis Court of Appeals.

Missouri.

Nov. 17, 1959.

W. A. Brookshire, Columbia, Betty Lyon, Chicago, Ill., for appellant.

John M. Dalton, Atty. Gen., State of Missouri, Richard R. Nacy, Jr., Special Asst. Atty. Gen., for respondent.

ANDERSON, Judge.

Defendant, W. A. Brookshire, was found guilty of the offense of issuing a check with intent to defraud in violation of Section 561.460 (all statutory references are to RSMo 1949, V.A.M.S.) and his punishment was fixed by the jury at confinement in the County Jail for a period of six months and a fine of $500. From this judgment defendant appealed to the Supreme Court. The appellate jurisdiction of the Supreme Court was invoked on the theory that Section 561.460 is unconstitutional for the reason that it permits imprisonment for debt, contrary to Section II of Article I of the Missouri Constitution, V.A.M.S.; that defendant was denied due process of law guaranteed to him under the Constitution of the United States and of the State of Missouri; and that he was placed in double jeopardy contrary to Article V of the Amendments to the Constitution of the United States. The Supreme Court held that the foregoing constitutional questions were not timely raised or properly preserved and hence it did not have jurisdiction of the appeal. The cause was accordingly transferred to this court for proper disposition. State v. Brookshire, Mo., 325 S.W.2d 497.

In the information originally filed by the Prosecuting Attorney of Boone County the check upon which the charge was based was described as being dated "Dec. 31, 1956." After a change of venue was taken to Audrain County, and on the day the case was set for trial, the Prosecuting Attorney was granted permission to amend the in-

formation to show that the date of the check was "Dec. 31, 1957." At that time defendant requested time to file a motion to dismiss "in view of the amendment which has been made." This request was denied.

The evidence offered by the State disclosed that on November 14 or 15, 1956, the County Collector of Boone County, Mr. Woodrow Wilson, sent a tax statement to defendant for his county taxes for 1956. The amount due as shown by this statement was the sum of $229.85 for personal property tax, and the sum of $498.33 for real property tax—a total tax of $728.18. Under the law, these taxes were due on November 1, 1956, and would become delinquent on January 1, 1957.

On January 1, 1957, or near that date, Collector Wilson received a check through the mail from the defendant for $728.18, which sum was the full amount owed by defendant for his 1956 taxes. The check bore the date December 31, 1957, and in the lower lefthand corner appeared the notation: "Taxes 1956." The check was drawn upon the Bank of Ste. Genevieve, Missouri. After receipt of this check Wilson deposited it in the Boone County National Bank in an account maintained for the deposit of tax money collected by him. He did not at the time notice that the check was dated "1957" instead of "1956". Wilson also at the time marked the tax statement "paid" and mailed it to defendant. This tax statement contained the following notation: "checks and drafts must clear before this becomes a receipt."

The check in question was endorsed by the Boone County National Bank and sent to the Federal Reserve Bank of St. Louis, and from the latter to the Bank of Ste. Genevieve for payment. The Bank of Ste. Genevieve, on January 7 or 8, 1957, refused payment of the check because of insufficient funds and returned the check through the Federal Reserve Bank of St. Louis to the Boone County National Bank. The latter bank returned the check to Wilson with a slip attached showing that the check was returned for the reason of "insufficient funds" and that Wilson's account was charged with the amount of the check. Wilson did not run the check through the bank again, but did call the Bank of Ste. Genevieve on January 18, 1957, and was informed by Mr. Wirth, an officer of the bank, that the check was "not good" on that day or on any day since it was given.

On January 11, 1957, Wilson wrote defendant the following letter:

"Dear Sir:

"Your check in the amount of $728.-18 has been returned to us marked 'insufficient funds.' Please advise us on this matter by Monday, January 14, 1957, or your taxes will remain on our records and will be delinquent as of January 1, 1957."

On January 12 or 14, 1957, defendant telephoned Wilson and said he would come to Wilson's office to take up this matter of the 1956 taxes, but never did so. The information was filed May 8, 1957, in the Boone County Circuit Court.

Defendant opened his account at the Bank of Ste. Genevieve on December 3, 1956. On that date he borrowed $1,500 from the bank, depositing in his account the sum of $805.77. For the balance of the sum borrowed, being $694.23, he secured a Cashier's check made payable to Mr. and Mrs. Kermit Wiggs. This check was for the payment of pasture rent. Defendant issued checks in the total sum of $804.93 against his bank account between December 3, 1956, and December 17, 1956, which were paid by the bank, leaving a balance in the account on the latter date of 84 cents. No deposit was made in this account other than the initial deposit during either December, 1956, or January, 1957. In February, 1957, there was a deposit of $100. No deposit was thereafter made. The account was closed on November 22, 1957, and never reopened. At no time after December 17, 1956, until the account was closed, were there suffi-

cient funds in the account to cover a check for $728.18. Defendant had no arrangements with the Bank of Ste. Genevieve for credit for this check or any other check.

At the close of the State's case the defendant offered a motion for judgment of acquittal, which the court refused. Defendant did not take the stand or offer any evidence. The case was then submitted to the jury, with the result as heretofore indicated.

Appellant's first point is that the Circuit Court of Audrain County was without jurisdiction to proceed with the case after the court improperly allowed the Prosecuting Attorney to amend the information to show that the check was dated December 31, 1957, instead of December 31, 1956; and by proceeding with the trial in the absence of jurisdiction defendant's rights, under the due process clauses of the Federal and State Constitutions, were violated. The Supreme Court held that this contention did not call for a construction of said constitutional provisions, for the reason that defendant's position was not that the authorized procedure employed (Sections 545.290 and 545.300, and Supreme Court Rule 24.02, 42 V.A.M.S.) denied him due process of law, but that the court's action was in violation of such authorized procedure. State v. Brookshire, Mo., 325 S.W.2d 497. This leaves for consideration by this court the question whether or not the court erred in permitting the amendment.

Section 545.290 provides that any information may be amended in matter of form or substance at any time by leave of court before trial. Section 545.300 provides that any information may be amended either as to form or substance at any time before the jury is sworn, but such amendment shall not be allowed where it attempts to charge an offense different from that charged or attempted to be charged in the original information. Supreme Court Rule 24.02 provides that an information may be amended at any time before verdict if no additional or different offense is charged and if the rights of the defendant are not prejudiced.

■ The record shows that the amendment was made before the jury was sworn. The purpose of the amendment was to correct an error in the description of the check. In our judgment, no new offense was charged. The defendant has not shown that he was prejudiced in any way by the amendment. Under the circumstances, the amendment was proper. State v. Sturrs, Mo., 51 S.W.2d 45; State v. Casteel, Mo., 64 S.W.2d 286; State v. Quinn, 344 Mo. 1072, 130 S.W.2d 511; State v. Flores, 332 Mo. 74, 55 S.W.2d 953; State v. Bowers, Mo., 29 S.W.2d 58.

Appellant contends that there was no substantial evidence to establish an intent to defraud and for that reason his motion for a judgment of acquittal should have been sustained.

■ The gist of the offense denounced by the statute (Sec. 561.460) is the fraudulent intent with which a check, draft or order is drawn and delivered, and knowledge by the drawer at the time of said drawing and delivering that he has not sufficient funds in or credit with the bank to meet such check, draft or order in full upon its presentation. Intent to defraud is an essential element of the crime denounced by the statute. By Section 561.470 it is provided:

"As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in or credit with, such bank or other depositary, provided such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with all costs and protest fees, within five days after receiving notice that such check,

draft or order has not been paid by the drawee."

The State in its brief contends that the evidence made a prima facie case for the jury under the foregoing section of the statute.

■■ The evidence shows that this was a post-dated check, and therefore was payable on or after its date. State v. Taylor, 335 Mo. 460, 73 S.W.2d 378, 95 A.L.R. 476; 9 C.J.S. Banks and Banking § 345, p. 696. In such a case the permissible inference which the statute creates could only arise if the check were presented to the bank and turned down at a date when it was payable. The evidence shows that the check in question was dated December 31, 1957. It was presented to the bank on which it was drawn on January 7 or 8, 1957, at which time payment was refused for the reason that defendant did not at that time have on deposit sufficient funds from which the check could be paid. Notice that said check was not paid by the drawee and the reason therefor was given to defendant on January 11th. All this took place before the check was payable. In our judgment the presentation, refusal of payment and notice of dishonor, all occurring prior to the time the check became payable, was insufficient to establish a statutory prima facie case of fraud. But the State contends there was adduced sufficient evidence of fraud independent of any inference thereof permitted under the statute. In support of this contention the following facts are relied upon: that the check was marked "1956 taxes" and was payable to the collector in response to a tax bill sent to defendant; that the check was post-dated, and received by the collector at a time when an error as to date would likely go unnoticed; that there was no agreement between defendant and the collector with reference to the giving of a post-dated check; and failure on the part of defendant, after receiving the letter of January 11, 1957, to call at the collector's office and take care of the taxes after promising to do so in a telephone conversation with the collector.

■ In most cases, criminal intent must of necessity be inferred and found from other facts which in their nature are subject to specific proof; and in such cases, if the other constituent elements of the crime are proved, the issue of criminal intent is for the jury to determine from all the circumstances. This inference is sometimes irresistible, but in other cases it may be and often is a matter of great difficulty. But before a jury is permitted to find a verdict of guilty where a fraudulent intent is an element of the crime there must be found in connection with the act done attending circumstances which bespeak fraud—a situation where common experience finds a reliable correlation between the act and a corresponding intent. If such a relation is absent, or if the circumstances proved are consistent with innocence or raise only a suspicion or probability of guilt, a conviction cannot be allowed to stand. 23 C.J.S. Criminal Law § 919, p. 190.

■ Ordinarily, where a check is drawn on a bank in which the drawer does not have on deposit sufficient funds from which the check can be paid, the mere fact of making the check with knowledge of the insufficiency of the account would be sufficient evidence of fraudulent intent to send the case to the jury. But this is not so in the case of a post-dated check. Such a check differs from an ordinary check in that it carries on its face implied notice that there is not sufficient money presently on deposit to meet it, and an implied promise that there will be funds on deposit the date the check becomes due. The fraudulent intent required to be shown in such a case is with reference to the promise or assurance of future action (Neidlinger v. State, 17 Ga.App. 811, 88 S.E. 687; State v. Barone, 98 N.J.L. 9, 118 A. 779), and not with reference to the failure to keep the promise. Otherwise, the law would be punishing one for a failure to pay a debt.

But such intent cannot be inferred from the mere issuance of the check, or from the other facts in this case relied upon by the State as sufficient to send the issue to the jury. These circumstances, while they may create a suspicion of guilt, are yet wholly insufficient to prove a fraudulent intent. They are consistent with the fact of innocence. Therefore, since there was an absence of evidence of actual intent to defraud and a lack of proof of presentation in accordance with the provisions of Section 561.470, the court should have sustained defendant's motion for judgment of acquittal. In view of this holding, it becomes unnecessary to notice other assignments of error urged by appellant.

The judgment appealed from is reversed and defendant discharged.

WOLFE, P. J., and RUDDY, J., concur.