STATE of North Dakota, Plaintiff,

v.

LaVonne S. McDOWELL, Defendant.

Cr. No. 790.

Supreme Court of North Dakota.

Oct. 28, 1981.

Larry E. Stern, Asst. State's Atty., Fargo, for plaintiff.

William Kirschner, Fargo, for defendant.

SAND, Justice.

The issues under consideration were certified to us pursuant to Rule 47.1 of the North Dakota Rules of Appellate Procedure by the Honorable Donald J. Cooke, Judge of Cass County Court with Increased Jurisdiction.

The certified questions and answers by the trial court are:

(1) Is it constitutional to subject an offender to imprisonment under Section 6–08–16 of the North Dakota Century Code? Answer: No

(2) If it is unconstitutional to subject an offender to imprisonment under Section 6–08–16 of the North Dakota Century Code, is it constitutional to subject such offender to a fine? Answer: Yes

The trial court's findings of fact of all pertinent facts needed to resolve the question of law are as follows:

"On or about the 19th day of October, 1980 in Fargo, County of Cass, the defendant made or drew a check upon the State Bank of Burleigh County, Bismarck, North Dakota, in the sum of $13.50, dated October 19, 1980, made payable to the General Store and uttered and delivered the same to said General Store of Fargo, North Dakota, and at the time of such making, drawing, uttering or delivering, or at the time of presentation for payment made within one week of the original delivery thereof, said defendant did not have sufficient funds in, or credit with such bank to meet such check in full upon presentation. The defendant thus submits all the material allegations and elements of the complaint and thus admits being an offender of the statute."

Section 6–08–16, North Dakota Century Code, provides as follows:

"1. Any person who for himself or as the agent or representative of another, or as an officer or member of a firm, company, copartnership, or corporation makes or draws or utters or delivers any check, draft, or order for the payment of money upon a bank, banker, or depository, and at the time of such making, drawing, uttering, or delivery, or at the time of presentation for payment if made within one week after the original delivery thereof, has not sufficient funds in or credit with such bank, banker, or depository to meet such check, draft, or order in full upon its presentation, shall be guilty of a class B misdemeanor. The word 'credit' as used in this section shall mean an arrangement or understanding with the bank, banker, or depository for the payment of such check, draft, or order. The making of a postdated check knowingly received as such, or of a check issued under an agreement with the payee that the same would not be presented for payment for a time specified, shall not constitute a violation of this section.

"2. A notice of dishonor may be sent by the holder of the check upon dishonor, said notice to be in substantially the following form:

Notice of Dishonored Check

Date _____

Name of Issuer _____

Street Address _____

City and State _____

You are according to law hereby notified that a check dated ____, 19__, drawn on the _____ Bank of _____ in the amount of _____ has been returned unpaid with

the notation the payment has been refused because of nonsufficient funds. Within ten days from the receipt of this notice, you must pay or tender to _____ sufficient moneys to pay (Holder) such instrument in full.

"Such notice may also contain a recital of the penal provisions of this section . . .

"The criminal complaint for the offense of issuing a check, draft, or money order without sufficient funds under this section must be executed within not more than ninety days after the dishonor by the drawee of such instrument for nonsufficient funds. The failure to execute a complaint within said time shall bar the criminal charge under this section."

 Initially we note, and it is conceded by both parties, that a culpability element is not required to constitute a violation of NDCC § 6–08–16.[1]

The defendant contends that NDCC § 6–08–16 is unconstitutional in that it does not set out a *mens rea*, intent, or culpability and in effect provides for strict criminal liability. The defendant further contends that if the statute is not unconstitutional for those reasons, then only a fine, but no incarceration penalty, may be imposed.

The State asserts that the statute, NDCC § 6–08–16, is a valid regulatory statute and that a violation of its provisions constitute a class B misdemeanor for which the penalty of a maximum of 30 days' imprisonment and a fine of $500, or both, may be imposed. NDCC § 12.1–32–01(5).

The pivotal issue we must resolve is: May the Legislature enact laws making the violation thereof a matter of strict criminal liability regardless of any *mens rea*, intent, or culpability involved? If so, is there any limitation as to the penalty which may be imposed?

The secondary issue is: If the Legislature *may* enact such laws, may the penalty be more than a fine, or may incarceration be part of the penalty?

 At common law, criminal liability required proof of both a guilty mind and the proscribed physical act. W. LaFave & A. Scott, Handbook on Criminal Law 192 (1972). The advent of modern statutory crime which has no antecedent in common law, has, to a limited degree modified the traditional rule. See, *e. g., United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); *United States v. Behrman*, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922). In *Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957), the Supreme Court stated:

"We do not go with Blackstone in saying that a 'vicious will' is necessary to constitute a crime, . . . for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition."

However, *Lambert v. California, supra,* makes it clear the Legislature's "latitude" is not unlimited.

Both the defendant and the State relied heavily upon *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). But that case is not dispositive of the issues under consideration here for several reasons. In *Morissette*, the defendant, after hunting on a government bombing range, carried away and sold three tons of spent bomb casings in violation of 18 U.S.C. § 641. This statute, in pertinent part, provides:

---

1. Section 12.1–02–02(2), NDCC, provides as follows:

"If a statute or regulation thereunder defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is willfully."

However, that section applies only to offenses or crimes described in Title 12.1. *State v. Carpenter*, 301 N.W.2d 106 (N.D.1980); *State v.*

*North Dakota Education Association*, 262 N.W.2d 731 (N.D.1978); *City of Dickinson v. Mueller*, 261 N.W.2d 787 (N.D.1977).

Furthermore, it is apparent that the Legislature intended that NDCC § 6–08–16 contain no culpability element. Prior to 1961 that section contained a culpability element (i. e., knowing); however, in 1961 the Legislature deleted those words and the present statute is the same as the 1961 amendment in this respect.

"Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority sells, conveys, or disposes of any record ... or thing of value of the United States ... shall be fined˙not more than $10,000 nor imprisoned not more than ten years, or both ...."

In *Morissette* the trial court refused to submit, or to allow defendant's counsel to argue to the jury that the defendant acted without wrongful or criminal intent, and instructed the jury that lack of criminal intent was not a defense, and that such intent was "presumed by his own act." The indictment, however, charged that he "did unlawfully, willfully, and knowingly steal and convert" property of the United States of the value of $84 in violation of 18 U.S.C. § 641.

The issue was whether or not Congress intended to impose liability for taking Government property where the defendant honestly believed the property had been abandoned.

The *Morissette* Court at 342 U.S. 274, 72 S.Ct. 255, 96 L.Ed. 306, said:

"Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury."

The indictment clearly included intent as a part of the crime charged even though the statute may not have specifically included intent. The Court observed that stealing, purloining, etc., was a common law offense and that intent was an ingredient of that crime. The Supreme Court then construed the statute to require proof that the defendant had knowledge he was taking Government property.

But more significantly, *Morissette* did not directly or indirectly rule on the issues that we have here under consideration. The Court specifically said:

"Neither this Court nor, so far as we are aware, any other has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not. We attempt no closed definition, for the law on the subject is neither settled nor static. The conclusion reached in the Balint [*United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922)] and Behrman [*United States v. Behrman*, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922)] cases has our approval and adherence for the circumstances to which it was there applied." *Morissette, supra*, 342 U.S. at 260, 72 S.Ct. at 248, 96 L.Ed. at 299.

In *Balint* the defendant was charged with unlawfully selling a derivative of opium and a certain amount of a derivative of coca leaves contrary to the provisions of § 2 of the Narcotic Act of December 17, 1914,[2] and not pursuant to any written order or form issued in blank for that purpose by the commissioner of internal revenue. The defendants demurred on the ground that the charge failed to state that they sold the inhibited drugs knowing them to be such. The statute did not make knowledge an element of the offense. In determining whether or not there was a violation of due process for punishing a person for violating a crime which involved no culpability, the Court responded by saying:

"But that objection is considered and overruled in *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 69, 70, 30 S.Ct. 663, 666, 54 L.Ed. 930, in which it was held that in the prohibition or punishment of particular acts, the state may in the maintenance of a public policy provide 'that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.' Many instances of this are to be found in regulatory measures in the exercise of what is called the police power, where the emphasis of the statute is evidently upon achievement of some social betterment rather than upon the punishment of the crimes, as in cases of mala in se." *United States v. Balint*, 258 U.S. 250 [252], 42 S.Ct. 301 [302], 66 L.Ed. 604, 605.

2. Comp.St. § 6287h.

In *Behrman* the defendant was charged with unlawfully selling and giving away heroin and morphine without a written order or prescription. The Court observed that:

"If the offense be a statutory one, and intent or knowledge is not made an element of it, the indictment need not charge such knowledge or intent." *United States v. Behrman*, 259 U.S. 280 [288], 42 S.Ct. 303 [304], 66 L.Ed. 619, 621.

The Court, in *Morissette*, 72 S.Ct. at 244, 245, also observed that "the *Balint* and *Behrman* offenses belong to a category of another character with very different antecedents and origins [than there is found in stealing, purloining, etc.]. The crimes there [*Balint* and *Behrman*] involved depend on no mental element but consist only of forbidden acts or omissions. This, while not expressed by the Court, is made clear from examination of a century-old but accelerating tendency discernible both here and in England to call into existence new duties and crimes which disregard any ingredient of intent."

The Court in *Morissette* significantly observed that the industrial revolution, together with congestion of cities and crowded quarters and the wide distribution of goods, created the need for reasonable standards of quality, integrity, disclosure and care needed to protect the public health, safety, and welfare. The *Morissette* Court, in distinguishing that case from cases based upon regulatory or "public welfare offenses," which do not require proof of intent, said as follows:

"While many of these duties are sanctioned by a more strict civil liability, lawmakers, whether wisely or not, have sought to make such regulations more effective by invoking criminal sanctions to be applied by the familiar technique of criminal prosecutions and convictions. This has confronted the courts with a multitude of prosecutions, based on statutes or administrative regulations, for what have been aptly called 'public welfare offenses.' These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inactions where it imposes a duty.... While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime." *Morissette, supra*, 96 L.Ed. at 296, 342 U.S. at 254, 256, 72 S.Ct. at 245, 246.

As an example of statutes that make violations a crime without intent or *mens rea* are found in §§ 39–06–40, 39–06–40.1, 39–06–42, Ch. 39–10, Ch. 10–04, and §§ 10–04–08, 10–04–04, 19–03.1–23, and Ch. 5–01. This list is not inclusive and other examples can be found in the Century Code Index under the heading "Crimes." [3]

---

**3.** Examples of federal crimes which can be committed without culpability are shipping misbranded or adulterated food, drugs, devices, or cosmetics in interstate commerce (21 U.S. C.A. § 331(a)); selling liquor to certain Indians (18 U.S.C.A. § 1154); and hunting certain birds contrary to regulations (16 U.S.C.A. § 703).

The common-law crimes as such generally are listed in North Dakota under Title 12.1.

The fact that the section of law involved in this instance is found under Title 6 dealing with Banks and Banking, is not necessarily controlling. It is, however, an indication that the statute is primarily a regulatory standard or measure and is not considered a common-law crime as such.

We do not think that anyone would seriously dispute that the use of checks in the commercial business activities has increased significantly and is now accepted as a method of doing and transacting business by a vast majority of the population. In many instances persons have become dependent upon the use of checks as a common practice of doing business and the business world has become accustomed to this and relies upon it. The practice becomes a part of the daily routine to the extent that if it were abruptly stopped or curtailed it would create havoc in the business world. It is an activity that needs to be carefully regulated because a violation impairs the efficiency of controls essential to the business world as well as to the public welfare. The method of regulation is to a great degree a matter that should be decided by legislative action rather than by judicial decree.

The defendant suggested that the rule of law announced in *State v. Carpenter*, 301 N.W.2d 106 (N.D.1980), is applicable to the instant case. In *State v. Carpenter, supra*, we held that the North Dakota *felony* bad check statute (NDCC § 6–08–16.2) was unconstitutional. However, the instant case can be readily distinguished from the *Carpenter* case where, among other things, the constitutionality of the act was challenged because it contained a presumption of intent to defraud, not at the making or passing of the check, but if the drawee, after notice, failed to make, or refused payment of the check due to insufficient funds. We also found in the *Carpenter* case that the statute in question there, NDCC § 6–08–16.-2, violated the equal protection under the fourteenth amendment to the United States Constitution and Art. 1, § 20 of the North Dakota Constitution because it favored persons who had funds to make them available within a certain time after notice of dishonor, as distinguished from persons who do not have funds. As to a statutory presumption of intent to defraud, the United States Supreme Court, in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) held that any such presumption was unconstitutional. We do not believe that the *Carpenter* case is comparable or has any application to the instant case.

■ We conclude that it is proper for the Legislature to enact laws making the violation thereof a matter of strict criminal liability without a culpability requirement and that NDCC § 6–08–16 is a proper exercise of that power.

■ Further, we believe it is consistent with the purposes of a regulatory statute to allow the imposition of a fine or imprisonment for a violation of the offense without offending due process. The regulatory provisions would be an exercise in futility if there were no sanctions for non-compliance.

We are aware that in *State v. Carpenter, supra* at 111, we said:

"The imposition of criminal sanctions under § 6–08–16.2, N.D.C.C., in the absence of mental culpability requirements would be difficult to square with the generally accepted functions of the criminal law because the criminal sanctions would be used to punish not only conscious and calculated wrongdoing, but also innocent and mistaken conduct."

We note, however, that those statements were dicta and were made for the "purpose of determining where problems may exist in the statute [NDCC § 6–08–16.2]." *Id.* at 110. We must keep in mind that § 6–08–16 is a regulatory statute passed for the public welfare to help facilitate transactions in commercial business activities. Thus, the generally accepted functions of criminal sanctions (*i. e.*, deterrence, punishment) are not the only consideration, and we must also consider the need to regulate and police

business activities which are procured with a check.

The State, in its brief, cites us to several cases supporting imprisonment for the violation of a strict criminal liability offense. *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 536 (1971) [possession of unregistered firearm (hand grenades); $10,000 fine or ten years imprisonment, or both]; *Williams v. North Carolina*, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945) [bigamy; ten years imprisonment]; *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943) [misbranded or adulterated drugs; $1,000 fine and/or one year for first offense $10,000 fine and/or three years for subsequent offense;] *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922) [unlawful drug sale; five years imprisonment]; *United States v. Erne*, 576 F.2d 212 (9th Cir. 1978) [failure to collect and deposit into a bank trust account withholding and FICA taxes; one year and $5,000 fine]; *United States v. Ayo-Gonzalez*, 536 F.2d 652 (5th Cir. 1976) *cert. den.* 429 U.S. 1072, 97 S.Ct. 808, 50 L.Ed.2d 789 [illegal fishing in contiguous zone of United States, fine of not more than $100,000 or more than one year in prison]; *United States v. Flum*, 518 F.2d 39 (8th Cir. 1975), *cert. den.* 423 U.S. 1018, 96 S.Ct. 454, 46 L.Ed.2d 390 [attempt to board airplane with concealed dangerous and deadly weapon; one year or $1,000 fine, or both]; *Holdridge v. United States*, 282 F.2d 302 (8th Cir. 1960) [re-entry into military reservation, six months or $500, or both].

In this instance a violation of NDCC § 6–08–16 is a class B misdemeanor with penalty provisions of a maximum thirty days' imprisonment and a fine of $500, or both. The severity of these penalties are substantially less than those which were upheld in the federal cases. Further, a misdemeanor conviction does not carry with it the repercussions of a felony conviction.[4]

■ Neither do we believe that the conduct which is a violation of § 6–08–16 is vague so as to violate the due process requirement of fair warning. The "uncertainty" and "confusion" of proscribed activity which was present in *State v. Carpenter, supra*, is not present in this instance because there is no mention of "intent to defraud" in any of the subsections of § 6–08–16. The conduct which is proscribed is that of issuing a check and having insufficient funds to pay the check either at the time of issuance or at the time of presentment for payment if the check was presented for payment within one week of the original delivery. The terms of this statute are not so vague that men could differ as to its application. *Papachristou v. Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

■ McDowell also asserts that NDCC § 6–08–16 violates Article I § 15 of the North Dakota Constitution. That section provides as follows:

"No person shall be imprisoned for debt unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law; or in cases of tort; or where there is strong presumption of fraud."

However, that section is not applicable to the instant case because the penalty of imprisonment is not for failure to pay a debt, but for issuing a check without sufficient funds either at the time of issuance or at the time of presentment if the check was presented for payment within one week of the original delivery. The penalty is not for failure to make satisfaction for the check, *State v. Portwood*, 59 S.D. 179, 238 N.W. 879 (1931); nor does the statute provide for dismissal of the prosecution upon payment of the check. *Burnam v. Commonwealth*, 228 Ky. 410, 15 S.W.2d 256 (1929); *State v. Johnson*, 163 Miss. 521, 141 So. 338 (1932).

---

4. Generally a person convicted of a felony may be prevented from exercising certain privileges. See, *e. g.,* NDCC § 5–02–02. There are situations in which a person may be required to disclose misdemeanor convictions, but these convictions generally do not per se bar that person from exercising a privilege.

We conclude that it is constitutionally permissible to sentence an offender to the penalty of a class B misdemeanor for a violation of NDCC § 6–08–16. This compels us to conclude that the trial court was in error as to its answer to the first question; however, as to its answer to the second question, we need not respond on the grounds that it is not unconstitutional to subject an offender to imprisonment under NDCC § 6–08–16.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.