STATE of North Dakota, Plaintiff
and Appellant,

v.

Bruce CARPENTER, Defendant
and Appellee.

Cr. No. 737.

Supreme Court of North Dakota.

Dec. 19, 1980.

John M. Olson, State's Atty., and Gail H. Hagerty, Asst. State's Atty., Bismarck, for plaintiff and appellant; argued by Richard Tessier, Senior Law Student.

Ralph A. Vinje, Bismarck, for defendant and appellee.

PAULSON, Justice.

The State appeals from a dismissal of a criminal information against Bruce Carpenter [hereinafter "Carpenter"] by the Burleigh County District Court. The district court held that § 6–08–16.2 of the North Dakota Century Code violated due process and equal protection under the Fourteenth Amendment to the United States Constitution and Article I, §§ 11, 13, and 20 of the North Dakota Constitution. We affirm the judgment of the district court.

The question of standing focuses upon whether the litigant is entitled to have the court decide the merits of the dispute. It is founded in concern about the proper—and properly limited—role of the courts in a democratic society. See *Schlesinger v. Reservists' Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 [1974]. Without the limitation of the standing requirements, the courts would be called upon to decide purely abstract questions. As an aspect of justiciability, the standing requirement focuses upon whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to justify exercise of the court's remedial powers on his behalf. *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The inquiry is two-fold. First, the plaintiff must have suffered some threatened or actual injury resulting from the putatively illegal action. *Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 36 L.Ed.2d 536 (1973). Secondly, the asserted harm must not be a generalized grievance shared by all or a large class of citizens; the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). When a person is subject to a criminal prosecution, or is faced with its imminent prospect, that person has clearly established the standing requirements to oppose the prosecution by asserting his relevant constitutional rights. *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Schlesinger v. Reservists' Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

On November 5 and on December 4, 1979, Carpenter issued checks without having sufficient funds in his bank checking

account with which to pay the checks. Carpenter was subsequently charged with a misdemeanor, under § 6–08–16.2, N.D.C.C., and pleaded guilty to the charge on January 28, 1980. He was fined and ordered to make restitution on the checks. On February 4, 1980, Carpenter issued another check without having sufficient funds in his checking account. The State charged Carpenter with a class C felony under § 6–08–16.2, N.D.C.C., which allows the drawer of nonsufficient fund (NSF) checks to be prosecuted for commission of a felony if the drawer had previously been convicted under § 6–08–16, N.D.C.C. Section 6–08–16.2, N.D.C.C., provides, in pertinent part:

"*6–08–16.2. Issuing check without account or with insufficient funds—Penalty—Exceptions.*

1. As used in this section:

a. 'Account' means any account at a bank or depository from which an instrument could legally be paid.

b. 'Dishonor' is synonymous with "nonpayment".

c. 'Instrument' means any check, draft, or order for the payment of money.

d. 'Issues' means draws, utters, or delivers.

2. Any person who, for himself or as agent or representative of another, issues any check, draft, or order for the payment of money is guilty of a class C felony if:

a. At the time of issuing the instrument, the drawer does not have an account with the bank or depository on which the instrument is drawn; or

b. At the time of issuing the instrument, or at the time of presentation for payment if made within one week after the original delivery of the instrument, the drawer does not have sufficient funds in the bank or depository, or credit with the bank, banker, or depository, to pay the instrument in full upon its presentation; and

c. If the drawer has been previously convicted of issuing an instrument without an account or without suffi-

cient funds in a bank or depository pursuant to section 6–08–16.

3. The fact that payment has been refused by a drawee because of insufficient funds or because the drawer has no account with the drawee from which payment could legally be made shall constitute prima facie evidence of intent to defraud. However, if the drawer pays the holder of the instrument within thirty days after receiving written notice of nonpayment by certified mail or by personal service in accordance with rule 4(d) of the North Dakota Rules of Civil Procedure, that fact shall constitute an affirmative defense to a criminal prosecution under this section.

4. A criminal complaint for violation of subdivision b of subsection 2 must be executed within ninety days after the drawer of the instrument receives notice, from the holder, of nonpayment. Failure to execute a complaint within the time set forth in this subsection shall constitute a bar to any criminal charges under subdivision b of subsection 2.

. . ."

The district court's decision was based upon several reasons. Subsection 2 of § 6–08–16.2, N.D.C.C., enumerates the situations in which a person who issues a check is guilty of a class C felony. Subsection 2 does not include a "mens rea" or mental culpability requirement. The only hint of such a requirement is included in subsection 3 of § 6–08–16.2, N.D.C.C., which states that "The fact that payment has been refused by a drawee because of insufficient funds . . . shall constitute prima facie evidence of intent to defraud." The district court reasoned that this section was impermissibly vague and violative of due process because of the absence of a mental culpability requirement. The district court also reasoned that the absence of a. mental culpability requirement created a debtor's prison in that, regardless of the drawer's motives or possible civil defenses to payment of the check, the drawer may be required to

satisfy the creditor's claim against him in order to avoid criminal liability, under subsection 3 of § 6–08–16.2, N.D.C.C.

The district court determined that the provision of subsection 3 of § 6–08–16.2, N.D.C.C., previously quoted, contained an unconstitutional presumption because the presumption of intent to defraud arises when the drawee refuses payment of the check due to insufficient funds. The burden of persuasion would be shifted to the defendant, and the jury in effect would be instructed that the State had proven its case upon the mere introduction of the nonsufficient fund check into evidence. Such an instruction would violate both the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt, and the United States Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

Finally, the district court reasoned that § 6–08–16.2 violates the concept of equal protection of the laws under the Fourteenth Amendment to the United States Constitution and § 20 of the North Dakota Constitution because of the provision contained in subsection 3 of § 6–08–16.2, N.D.C.C., which states "However, if the drawer pays the holder of the instrument within thirty days after receiving written notice of nonpayment ... that fact shall constitute an affirmative defense to a criminal prosecution under this section". The district court determined that this provision revealed that the execution and delivery of the nonsufficient fund check did not constitute the complete offense; rather, it is not until the check is presented for payment on or after the date for payment and payment has been refused for lack of funds that the crime is complete. Under this interpretation of the statute, the penalty prescribed by law applies to the drawer's failure to pay the check, rather than to the drawer's issuance of a nonsufficient fund check and, thus, the statute discriminates against an indigent.

## VIOLATION OF EQUAL PROTECTION

 The district court determined that § 6–08–16.2, N.D.C.C., violated equal protection under the Fourteenth Amendment of the United States Constitution and Article I, §§ 11, 13, and 20 of the North Dakota Constitution. Subsection 3 of § 6–08–16.2, N.D.C.C., permits the drawer to pay the holder of the instrument within thirty days after receiving written notice of nonpayment and also permits the drawer to assert that fact as an affirmative defense to a criminal prosecution. The district court determined that the statute discriminated against the indigent, *i. e.*, Carpenter, and was unconstitutional. Section 6–08–16.2, N.D.C.C., constitutes class legislation because it imposes criminal prosecution burdens upon some persons, *i. e.*, indigents, which are not imposed upon others. Classification itself is not prohibited; however, in classifying to achieve social goals, the legislators may not act arbitrarily. *Hospital Services, Inc. v. Brooks*, 229 N.W.2d 69 (N.D.1975).

The United States Supreme Court has not formulated a clear test for determining whether a classification is a suspect classification or involves fundamental interests, which invoke strict judicial scrutiny "compelling state interest" as a standard of review. However, the Court has cited factors which include immutable and highly visible characteristics, historical disadvantage, and relative lack of political representation as relevant in determining which classifications are suspect. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Wealth discrimination, *i. e.*, indigency, has not been declared to be a suspect classification by the Court; however, the Court has not ruled out the possibility that wealth discrimination may be a suspect classification. *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). *See Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); and *San Antonio Independent School District v.*

*Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

 While it is impossible for the legislature to draw classifications equally in all cases, the classification in a criminal statute which affords a defense only on the basis of the ability of a defendant to pay the amount of the nonsufficient fund check calls for a standard of review greater than the rational relationship—"rational basis"—standard. This result is required by the nature of the interest of a defendant, *i. e.,* "Carpenter", which is affected by a failure to pay the amount of the nonsufficient fund check within thirty days after receiving written notice of nonpayment. The failure to pay results in a criminal prosecution for commission of a felony whereas a drawer who pays the holder of the instrument within thirty days after receiving written notice of nonpayment is provided with an affirmative defense. While indigency is not a "suspect classification" at the present time, we believe that the combination of the classification based upon wealth and the vital interests of Carpenter at stake in a criminal prosecution require an intermediate standard of review.

 The classification contained in § 6–08–16.2, N.D.C.C., is invalid unless it serves an important state interest and the classification based upon wealth is substantially related to that interest. See *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). While the state interest in preventing the issuance of nonsufficient fund checks is important, the classification based upon the ability of a defendant to pay for an affirmative defense to criminal prosecution is not substantially related to that interest. Thus, the classification based upon wealth constitutes a denial of equal protection to Carpenter, and, therefore, § 6–08–16.2, N.D.C.C., is constitutionally infirm.

## VIOLATION OF DUE PROCESS

 Carpenter also contends that § 6–08–16.2, N.D.C.C., violates due process. Our conclusion that § 6–08–16.2, N.D.C.C., violates equal protection renders unnecessary an examination of this issue except for

the purpose of determining where problems may exist in the statute. A statute defining an offense is void on the ground of "vagueness" and is violative of due process when the conduct prohibited or permitted is expressed in terms so vague that men differ as to its application. *Papachristou v. Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). A basic thread in the fabric of our law is the time-honored principle that all persons are presumed to know the law. Conversely, no person may be held criminally responsible for conduct which that person could not reasonably understand to be proscribed. The "fair-warning" requirement is violated where inherently vague statutory language permits selective law enforcement. *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). However, a clear and precise enactment may nevertheless be overbroad if in its reach it prohibits constitutionally protected conduct. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

 Subsection 2 of § 6–08–16.2, N.D. C.C., does not contain a mental culpability requirement. Section 12.1–02–02, N.D.C.C., states that if a statute defining a crime does not specify any culpability requirement and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is "willfully". Our decisions in *City of Dickinson v. Mueller,* 261 N.W.2d 787 (N.D.1977), and *State v. North Dakota Education Assn.,* 262 N.W.2d 731 (N.D.1978), have restricted the application of § 12.1–02–02, N.D.C.C., to Title 12.1, Criminal Code, N.D.C.C., alone. Although subsection 3 of § 6–08–16.2, N.D. C.C., contains the term "intent to defraud", the absence of this requirement in subsection 2 indicates that either no mental culpability requirements are applicable to the statute or that those seeking to avoid the statute's prohibitions are to infer that in-

tent to defraud is required. Strict liability offenses (*i. e.*, liability without mental culpability) are not unknown to the criminal law and do not invariably offend constitutional requirements. However, the limited circumstances in which the United States Supreme Court has recognized such offenses attest to their generally disfavored status. W. LaFave & A. Scott, Criminal Law 222–223 (1972). Thus, public welfare offenses, *i. e.*, regulatory measures enacted by the legislature under the exercise of the police power, which dispense with mental culpability requirements, have generally been upheld if the accused is in a position to prevent the offense with no more care than society might reasonably expect and the penalty provided is small. *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

■ The United States Supreme Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether or not that standard incorporates a requirement of *mens rea* or mental culpability. *See, e. g., Colautti v. Franklin*, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); *United States v. United States Gypsum Company*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *Boyce Motor Lines v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952). The imposition of criminal sanctions under § 6–08–16.2, N.D.C.C., in the absence of mental culpability requirements would be difficult to square with the generally accepted functions of the criminal law because the criminal sanctions would be used to punish not only conscious and calculated wrongdoing, but also innocent and mistaken conduct.

■ The uncertainty fostered by the absence of a mental culpability requirement in subsection 2 of § 6–08–16.2, N.D.C.C., is increased by language found in subsection 3 of § 6–08–16.2, N.D.C.C., which states "The fact that payment has been refused by a drawee because of insufficient funds or because the drawer has no account with the drawee from which payment could legally be made shall constitute prima facie evidence of intent to defraud." Confusion ex-

ists because intent to defraud, if it is intended as the mental culpability requirement applicable to the conduct constituting class C felonies under subsection 2, is included in subsection 3 of § 6–08–16.2, N.D. C.C., rather than in subsection 2. Thus, confusion is created because the mental culpability requirement, if it constitutes an intent to defraud, is not contained in the correct subsection. Although it is not likely that a person violating the provisions of subsection 2 of § 6-08–16.2, N.D.C.C., would consider the text of the law before that person acted, it is reasonable that fair warning should be given to the world in language and in the context that the common world will understand. To make the warning fair, the language and the context in which it is used should be clear. The severe repercussions caused by violations of subsection 2 of § 6–08–16.2, N.D.C.C., should, at a minimum, eliminate the necessity of a person having to infer the requisite mental culpability.

Subsection 3 of § 6–08–16.2, N.D.C.C., states that "The fact that payment has been refused by a drawee because of insufficient funds . . . shall constitute prima facie evidence of intent to defraud." The district court determined that the words "prima facie evidence" created a presumption of intent to defraud which the accused would be forced to rebut at trial. The words "prima facie evidence" and "prima facie" have an uncertain meaning. Whether or not the words "prima facie" or "prima facie evidence" create a permissible inference or a presumption is subject to substantial dispute, yet the effects of a permissible inference and a presumption of intent to defraud differ markedly. *See State v. Sheldon*, Cr. 674 (N.D. October 20, 1980); *State v. Chyle*, 297 N.W.2d 409 (N.D.1980).

For reasons stated in this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, Justice, dissenting.

This case was dismissed upon motion, so the question of how to properly instruct the

jury on burden of proof so as to protect Carpenter's rights has never been confronted. From the Findings of Fact, Conclusions of Law, Order for Judgment and the Memorandum Opinion, it appears that the trial court assumed that unconstitutional instructions would have to be given. The majority opinion apparently assumes the same. I agree that *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), would have to be kept in mind.

The heavy artillery required for a successful attack on the constitutionality of an act of the Legislature is missing from this case. See *So. Valley Grain Dealers v. Bd. of Cty. Com'rs of Richland County*, 257 N.W.2d 425, 434 (N.D.1977).

The dismissal ought to be set aside and the case remanded so that Carpenter can be given a fair trial with his rights under the federal and state constitutions protected.