STATE of North Dakota, Plaintiff
and Appellee,

v.

Duane THIEL, Defendant and Appellant.

Cr. No. 753.

Supreme Court of North Dakota.

March 12, 1981.

Thomas M. Tuntland, former State's Atty., Richard L. Schnell, present State's Atty., and Rodney K. Feldner, Asst. State's Atty., Mandan, for plaintiff and appellee, argued by Rodney K. Feldner.

Benjamin C. Pulkrabek, Mandan, for defendant and appellant, argued by Benjamin C. Pulkrabek, Mandan.

ERICKSTAD, Chief Justice.

The defendant, Duane Thiel, appeals from two judgments of conviction of issuing no-account checks entered by the trial court in the county court with increased jurisdiction of Morton County. The judgments of conviction are affirmed.

On July 17, 1980, Thiel issued two counter checks drawn on the Security State Bank of New Salem, North Dakota. The evidence reveals that Thiel did not have an account with the Security State Bank at the time he issued the checks.

The first check was issued to Trails West Restaurant in the amount of $16.39. The second check was issued to Ski's Liquor in the amount of $10. When the owner of Trails West was going through the checks he recognized Thiel's name and became sus-

picious. Upon calling the bank to determine whether or not the check was good, he was informed that Thiel had no account and that it would not do any good to send the check through the clearing process. This check was then given to the State's Attorney for Morton County for prosecution without being presented to the bank.

On July 21, 1980, Thiel was arraigned for a prior no-account check, not involved in this appeal. At that time, the complaint on the Trails West check was served upon him. Part of Thiel's sentence on the prior check was suspended on the condition that he not violate any check laws of North Dakota for the new two-year period of time. The next day, July 22, 1980, Thiel and his mother, Martha Thiel, went to the bank and his mother left a check for $25 with Allyn Lennie, the bank's manager, to 'cover the Ski's Liquor check when it came in. The transcript is unclear whether or not this arrangement was final or whether or not the final determination would have to be made by the bank's officers. It appears from the record, however, that the Ski's Liquor check had already come into the bank that morning before Mr. Lennie met with Thiel and his mother and the check had been marked no-account. In any case, the Ski's Liquor check was returned marked no-account and it was turned over to the Morton County State's Attorney for prosecution.

A trial was held before the Morton County Court with Increased Jurisdiction. Thiel was found guilty of issuing a no-account check in violation of Section 6–08–16.1, N.D.C.C., on both checks. Thiel was fined $130 and sentenced to one year in the county jail with 11 months suspended on the condition that he:

(1) Make restitution for the checks within five days;

(2) Cooperate in an alcoholism program; and

(3) Not violate any North Dakota checking laws for a two-year period.

The same sentence was imposed in each case with the jail terms to be served concurrently. Thiel appeals the convictions on the basis of the following issue:

Were the arrangements made by Duane and Martha Thiel with the Security State Bank of New Salem, on July 22, 1980, sufficient to relieve Duane Thiel from all criminal liability for the two counter checks he issued on July 17, 1980?

Thiel was convicted of violating the following North Dakota statute:

"*6–08–16.1. Issuing check or draft without account—Penalty.*—Any person who shall issue any check, draft, or order upon any bank, for the payment of money, and, at the time of such issuance does not have an account with such bank, shall be guilty of a class A misdemeanor." § 6–08–16.1, N.D.C.C.

Thiel now urges that the arrangement with the bank was sufficient to create a defense to the charge of issuing a no-account check in a manner similar to that allowed pursuant to Section 6–08–16.2, N.D.C.C. Section 6–08–16.2, as recognized by Thiel's counsel, was determined to be unconstitutional as it, in effect, allows a person to "buy" himself out of a prosecution. *State v. Carpenter*, 301 N.W.2d 106 (N.D. 1980). Section 6–08–16.1, however, contains no language which would allow a person to create an affirmative defense to the charge of issuing a no-account check.

■ Notwithstanding that he was not charged with violating Section 6–08–16, N.D.C.C., but was charged with violating Section 6–08–16.1, N.D.C.C., Thiel asserts that the language and procedure of Section 6–08–16 [1] should be considered. Section 6–

1. "*6–08–16. Issuing check or draft without sufficient funds or credit—Notice—Time limitation—Penalty.*—1. Any person who for himself or as the agent or representative of another, or as an officer or member of a firm, company, copartnership, or corporation makes or draws or utters or delivers any check, draft, or order for the payment of money upon a bank, banker, or depository, and at the time of such making, drawing, uttering or delivery, *or at the time of presentation for payment if made within one week after the original delivery thereof,* has not sufficient funds in or credit with such bank, banker, or depository to meet such

08–16, however, deals with insufficient funds and not with no-account checks. Because they are two different offenses, they should not be considered together or treated as one.

Section 6–08–16.1, the no-account check section, under which Thiel was charged, states that the crime is completed when the check is issued and the drawer does not have an account with such bank. Thiel contends that he should not be convicted of issuing the Trails West check as that check was not presented to the bank for payment. We do not agree. In *State v. Willms*, 117 N.W.2d 84 (N.D.1962), we determined that an arrest for issuing a no-account check could be based upon information a merchant received from the bank over the telephone that the drawer did not have an account. 117 N.W.2d at 87. While this case is not directly applicable as it involved the issue of an arrest based upon the oral charge, we believe it is sufficiently related to be comparable as it shows that a criminal prosecution for the issuance of a no-account check may be begun upon information received over the telephone without the check being presented to the bank.

Merchants must have a method of protecting themselves from persons who issue no-account checks. By the time a check is presented to the bank and returned marked no-account, a check-writer could be miles or states away. We we will not extend the language of Section 6–08–16.1 to require the useless act of presentment when the drawee has notice that the drawer does not have an account. If a mistake is made by the bank and the drawer does, in fact, have an account, that would be a defense to any prosecution. The offense of issuing a no-account check is committed at the time the check is issued and the drawer does not have an account.

In this case, it is clear that Thiel did not have an account when the checks were issued. It is also clear that Thiel did not make his "arrangement" until after he had been served with the complaint for issuing the Trails West check and he knew that the State's Attorney had the check and that it probably would not be presented to the bank. Furthermore, the Ski's Liquor check had been presented and had been marked no-account before Thiel made his arrangement.

The judgments of conviction for violating Section 6–08–16.1 are affirmed.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.

---

check, draft, or order in full upon its presentation, shall be guilty of a class B misdemeanor. The word 'credit' as used in this section shall mean an arrangement or understanding with the bank, banker, or depository for the payment of such check, draft, or order. The mak-

ing of a postdated check knowingly received as such, or of a check issued under an agreement with the payee that the same would not be presented for payment for a time specified, shall not constitute a violation of this section." (Emphasis added.) § 6–08–16(1), N.D.C.C.