**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Steve OHNSTAD, Defendant and Appellant.**

**Cr. No. 1133.**

Supreme Court of North Dakota.

July 30, 1986.

Keith Reisenauer, Asst. State's Atty., Fargo, for plaintiff and appellee.

Kirschner, and Baker Legal Clinic, Fargo, for defendant and appellant; argued by William Kirschner.

PER CURIAM.

Steve Ohnstad was charged with and convicted of the crime of issuing a check without sufficient funds in violation of North Dakota Century Code § 6–08–16. He was sentenced to thirty days in the county jail with twenty days suspended. On appeal he argues that the statute is being unconstitutionally and discriminatorily enforced against him. For the reasons stated herein we reverse the judgment of conviction.

The parties stipulated to the following facts pursuant to North Dakota Rule of Appellate Procedure 10(g). On April 22, 1985 Steve Ohnstad issued a check for $58.90 to Ronald M. Peterson. The check was dishonored for nonsufficient funds.

Peterson's representative contacted the office of the Cass County State's Attorney to seek Ohnstad's prosecution for violating NDCC § 6–08–16. As is its policy, the state's attorney's office notified Ohnstad by mail that if he did not settle this matter with Peterson within ten days, the state's attorney would consider instituting criminal charges against him. This notice [1] is optional under NDCC § 6–08–16. Ohnstad did not settle the matter with Peterson and the state's attorney charged Ohnstad with violating NDCC § 6–08–16. The state's attorney's decision to prosecute Ohnstad was based upon Ohnstad's failure to pay Peterson after being sent the notice and Peterson's continuing complaint. Ohnstad was convicted and sentenced to thirty days' incarceration (twenty days suspended).

In *State v. Carpenter*, 301 N.W.2d 106 (N.D.1980), we held NDCC § 6–08–16.2 unconstitutional because it established as a crime the issuance of a check without an account or without sufficient funds but established as an affirmative defense the payment by the drawer of the instrument within 30 days after receiving written notice of nonpayment of the check. We concluded that, although the State has an important interest in preventing the issuance of nonsufficient-fund checks, the classification making the ability of a defendant to pay an affirmative defense to criminal prosecution is not substantially related to

1.

STATE OF NORTH DAKOTA

COUNTY OF CASS

} SS.

TO  Steven Ohnstad
      Dazey
      North Dakota   58249
}

YOU ARE HEREBY NOTIFIED That on this date the undersigned complaining witness contracted [sic] the office of the Cass County States Attorney and requested that a criminal charge be filed against you for the issuance of a fradulent [sic] check in the amount of $  58.90  .

YOU ARE FURTHER NOTIFIED That according to the laws of the State of North Dakota, the filing of the charge would result in the issuance of a warrant for your arrest.

YOU ARE FURTHER NOTIFIED That the complaining witness has been advised that if this matter has not been settled within 10 days from this date, our office will consider facts presented by the complaining witness and if the facts are sufficient to sustain criminal charges at that time, a warrant will be issued for your arrest.

YOU ARE FURTHER NOTIFIED That all restitution or inquiries concerning the check complained of are to be directed to the complaining witness at the address and telephone number listed below.

Dated at Fargo, North Dakota, this  23rd  day of  May , 1985.

S/            ROBERT G. HOY
State's Attorney, Cass County

  Clarice G. Kadry
Complaining Witness
For            Ronald M. Peterson, D.D.S.
Address:  3214 13th Ave. South
Telephone Number:  701–232–3379

I HEREBY CERTIFY That to the best of my knowledge and belief the above referenced check was issued by the person above named, in Cass County, North Dakota, and that the issuance of the said check was in violation of the criminal laws of the State of North Dakota.

Dated this  21 day of  May , 1985.

S/  CLARICE G. KADRY
Complaining Witness

that interest. Therefore, we held that the statute violated equal protection under the Fourteenth Amendment to the United States Constitution.

Shortly after the decision in *Carpenter*, a challenge was made to the precursor of the statute here under attack, NDCC § 6–08–16, by the use of certified questions from the trial court. That challenge was primarily concerned with the "strict liability" nature of the statute, *i.e.*, that it does not set out a *mens rea*, or culpability requirement. It was also challenged on the basis that it violated Article I, § 15, of the North Dakota Constitution prohibiting imprisonment for debt. *State v. McDowell*, 312 N.W.2d 301 (N.D.1981).

The *McDowell* decision was concerned with NDCC § 6–08–16 as it existed prior to its amendment in 1981. Prior to 1981 the statute contained provisions similar to those of the statute currently before us. We upheld the statute, concluding the penalty was not for failure to make satisfaction for the check but rather for issuing a check without sufficient funds. In 1981 the statute was amended to include provisions similar to those found defective in *Carpenter*. Thereafter, in *State v. Fischer*, 349 N.W.2d 16 (N.D.1984), we adhered to our position in *Carpenter* and held the statute unconstitutional.[2]

Subsequent to the *Fischer* decision we held that the 1981 version of NDCC § 6–08–16 was constitutional because, unlike the statutes declared unconstitutional in *Carpenter* and *Fischer*, the 1981 version of § 6–08–16 makes no classification on the basis of wealth because it permitted, but did not require, a notice of dishonor to be sent; nor did subsequent payment constitute an affirmative defense. We concluded that the 1981 version of § 6–08–16 did not

make any statutory classification and therefore did not violate equal protection on its face. *State v. Mathisen*, 356 N.W.2d 129 (N.D.1984).

Finally, in *State v. Wilt*, 371 N.W.2d 159 (N.D.1985), this Court, noting that under *Mathisen* the statute did not violate equal protection on its face, held that the defendant Altman had not sufficiently proven his selective-prosecution claim.

The argument made here by Ohnstad is a variation of the selective-prosecution claim in *Mathisen* and *Wilt*. Ohnstad attacks the practice of the Cass County State's Attorney as violative not only of equal protection but also of Art. I, § 15 of the North Dakota Constitution prohibiting imprisonment for debt. That practice consists of sending a notice of dishonor specifying that if the matter has not been settled within 10 days the State's Attorney would consider criminal charges.[3] Ohnstad argues that the practice coupled with the evidence showing that in Cass County 70 percent of those persons whose checks come to the attention of the State's Attorney for prosecution respond to the notices of dishonor and are not prosecuted; that over 95 percent of the persons charged with violations of NDCC § 6–08–16 are people who have received the notice but who have not paid the check; and that in most cases they would not have been prosecuted if they had paid the check, is indistinguishable from what we found offensive in *Carpenter* and *Fischer*. We agree.

Although the current statute does not mandate the sending of the notice of dishonor, unlike the statutes declared unconstitutional in *Carpenter* and *Fischer*, and this distinction was the basis for the conclusion in *Mathisen* and *Wilt*, the statute

---

**2.** As a result of our decision in *State v. Fischer* the 1985 Legislature amended § 6–08–16 to its current form. The Interim Judiciary "B" Committee recommended House Concurrent Resolution No. 3004 directing the Legislative Council to study the North Dakota felony and misdemeanor bad check laws. The committee "recognized there may be alternative methods for preventing the issuance of, encouraging the payment of, and penalizing those who write bad

checks, which may be recommended as the result of an interim study of this area." Report of the N.D. Legislative Council, 49th Legislative Assembly 1985, p. 142. The resolution was defeated.

**3.** In this respect the content of the notice is substantially different from that authorized by § 6–08–16.

does authorize the sending of the notice with a demand for timely payment. We can discern no reason for such a provision other than that the maker of the check would, if possible, pay the check when the notice is received. More important, however, when that statutory authorization is combined with the practice here involved, *i.e.*, that after the office of the state's attorney has sent the notice, over 95 percent of the persons charged with a violation of § 6–08–16 are people who have received the notice but who have not paid the check, and the admission that in most cases they would not have been prosecuted if they had paid the check, there is no significant distinction between the statutes found unconstitutional in *Carpenter* and *Fischer* and the practice under the statute here in effect. Although § 6–08–16 is not, on its face, defective, as in *Carpenter*, when combined with the practice in effect in Cass County, the distinction between this case and *Carpenter* and *Fischer* is one without a difference. Here, unlike *McDowell*, the practice effectively makes the crime one for failure to pay, for if the check is paid there is no prosecution.

Accordingly, we reverse the judgment of conviction.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE, GIERKE and MESCHKE, JJ., concur.