**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Rick Donavon SCHMITZ, Defendant and Appellant.**

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Tammy Kay MATTHEWS, Defendant and Appellant.**

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Wendy Kay WALTHER, Defendant and Appellant.**

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Barbara Jean MONSON aka Barb J. Monson, Defendant and Appellant.**

Cr. Nos. 880086 and 880101–880103.

Supreme Court of North Dakota.

Nov. 10, 1988.

William Kirschner & Associates, Fargo, for defendants and appellants; argued by Robert J. Woods.

John Tainter Goff, Asst. State's Atty., Fargo, for plaintiff and appellee.

GIERKE, Justice.

The defendants, Rick Schmitz, Tammy Matthews, Wendy Walther and Barbara Monson, were each charged with the crime of issuing a check without sufficient funds in violation of Section 6–08–16 of the North Dakota Century Code. Each of the defendants have entered into conditional guilty pleas, filed notices of appeal and have stipulated that because the legal and factual issues in all four cases are identical the several appeals should be consolidated and joined under Rule 3(b) of the North Dakota Rules of Appellate Procedure.[1] For the reasons stated herein, we dismiss the appeals of Matthews, Walther and Monson and affirm the judgment of conviction in the Schmitz appeal.

The North Dakota Legislature has determined exactly what is and is not appealable. Sections 29–28–03 and 29–28–06 of the North Dakota Century Code provide as follows:

"29–28–03. Appeals are matter of right.—An appeal to the supreme court provided for in this chapter may be taken as a matter of right."

"29–28–06. From what defendant may appeal.—An appeal may be taken by the defendant from:

1. A verdict of guilty;

2. A final judgment of conviction;

3. An order refusing a motion in arrest of judgment;

4. An order denying a motion for a new trial; or

5. An order made after judgment affecting any substantial right of the party."

---

1. Rule 3(b), N.D.R.App.P., provides as follows: "Joint or consolidated appeals. If two or more persons are entitled to appeal from a judgment or order of a trial court and their interests are such as to make joinder practicable, they may file a joint notice of appeal, or may join in appeal after filing separate timely notices of appeal, and they may thereafter proceed on appeal as a single appellant. Appeals may be consolidated by order of the supreme court upon its own motion or upon motion of a party, or by stipulation of the parties to the several appeals."

The statutory language is clear and definite and needs no interpretation or construction. *State v. Lewis*, 291 N.W.2d 735, 738 (N.D.1980). The only determination that must be made is whether or not the subject of the appeal comes within the statutory provisions of Section 29–28–06 of the North Dakota Century Code.

■ In the consolidated appeal presently before this Court, the record discloses that no judgment of conviction has been entered in the cases of Matthews (Criminal No. 880101), Walther (Criminal No. 880102) and Monson (Criminal No. 880103). Because there is no order or judgment from which an appeal may be properly taken in the cases of Matthews, Walther and Monson, we dismiss those appeals.

In regard to the Schmitz appeal, the record indicates that a judgment of conviction was entered on February 18, 1988, and that the defendant has appealed from that judgment. Therefore we shall proceed to the merits of Schmitz' appeal.

The facts that generated Schmitz' prosecution may be briefly stated. On August 29, 1987, Schmitz wrote a check to Hornbachers grocery store in Fargo, North Dakota. Upon presentment for payment to Schmitz' bank, the Page State Bank of Page, North Dakota, the check was dishonored for insufficient funds. On September 22, 1987, a representative of Hornbachers grocery store sent to Schmitz pursuant to Section 6–08–16 of the North Dakota Century Code a notice of dishonor demanding payment within ten days. Schmitz did not settle the matter with Hornbachers. On October 5, 1987, a "fraudulent check report" was filed with the Cass County States Attorney's Office. On October 7, 1987, Schmitz was charged with issuing a check without sufficient funds in violation of Section 6–08–16 of the North Dakota Century Code.[2] On December 28, 1987,

2. Section 6–08–16, N.D.C.C., provides as follows:
"6–08–16. Issuing check or draft without sufficient funds or credit—Notice—Time limitation—Financial liability—Penalty.
1. A person may not, for himself, as the agent or representative of another, or as an officer or member of a firm, company, copartnership, or corporation make, draw, utter, or deliver any check, draft, or order for the payment of money upon a bank, banker, or depository, if at the time of such making, drawing, uttering, or delivery, or at the time of presentation for payment if made within one week after the original delivery thereof, there are not sufficient funds in or credit with the bank, banker, or depository to meet the check, draft, or order in full upon its presentation. Violation of this subsection is a class B misdemeanor.
2. The person is also liable for collection fees or costs, not in excess of ten dollars, which are recoverable by civil action by the holder of the check, draft, or order. A civil penalty is also recoverable by civil action by the holder of the check, draft, or order. The civil penalty consists of payment to the holder of the instrument of the lesser of one hundred dollars or three times the amount of the instrument.
3. The word 'credit' as used in this section means an arrangement or understanding with the bank, banker, or depository for the payment of the check, draft, or order. The making of a postdated check knowingly received as such, or of a check issued under an agreement with the payee that the check would not be presented for payment for a time specified, does not violate this section.

4. A notice of dishonor may be mailed by the holder of the check upon dishonor. Proof of mailing may be made by return receipt or by an affidavit of mailing signed by the individual making the mailing. The notice must be in substantially the following form:
Notice of Dishonored Check
Date _____
Name of Issuer _____
Street Address _____
City and State _____
You are according to law hereby notified that a check dated _____, 19____, drawn on the _____ Bank of _____ in the amount of _____ has been returned unpaid with the notation the payment has been refused because of nonsufficient funds. Within ten days from the receipt of this notice, you must pay or tender to _____ (Holder) sufficient moneys to pay such instrument in full and any collection fees or costs not in excess of ten dollars.
The notice may also contain a recital of the penal provisions of this section and the possibility of a civil action to recover any collection fees or costs or civil penalty authorized by this section.
5. An agent acting for the receiver of a check in violation of this section may present the check to the state's attorney for prosecution. The criminal complaint for the offense of issuing a check, draft, or money order without sufficient funds under this section must be executed within not more than ninety days after the dishonor by the drawee of said instrument for nonsufficient funds. The failure to execute a complaint within said time bars the criminal charge under this section."

Schmitz filed a motion to dismiss claiming the bad check statute, Section 6–08–16 of the North Dakota Century Code, was being unconstitutionally and discriminatorily enforced against him. The motion to dismiss was denied on January 22, 1988. On February 18, 1988, Schmitz entered a conditional plea of guilty pursuant to Rule 11(a)(2) of the North Dakota Rules of Criminal Procedure.[3] The court approved the conditional plea agreement and judgment of conviction was entered on February 18, 1988. On February 26, 1988, Schmitz filed this appeal.

Schmitz argues on appeal that Section 6–08–16 of the North Dakota Century Code is being unconstitutionally and discriminatorily enforced against him. Schmitz asserts that he is being selectively prosecuted on the basis of failure to pay a debt.

■ The Constitution forbids not only discriminatory laws but also discriminatory enforcement of non-discriminatory laws. *State v. Wilt*, 371 N.W.2d 159, 160 (N.D. 1985) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)).

In *State v. Mathisen*, 356 N.W.2d 129, 133 (N.D.1984), this Court set forth the elements necessary to establish discriminatory enforcement as follows:

> "To support a defense of selective prosecution a defendant must establish that other individuals similarly situated have not generally been prosecuted and that the State's selection of him for prosecution is invidious or in bad faith; that is, based upon constitutionally impermissible considerations such as wealth."

Schmitz maintains that the current procedure used by the Cass County States Attorney's Office in prosecuting insufficient funds cases is virtually indistinguishable from the procedure found objectionable by this Court in *State v. Ohnstad*, 392 N.W.2d 389 (N.D.1986). We disagree.

In *Ohnstad, supra*, we held that the practice of the Cass County States Attorney's Office of sending a notice of dishonor prior to initiating criminal charges, combined with the fact that over 95% of the individuals charged with violating Section 6–08–16 were individuals who failed to settle their bad checks and that in most cases they would not have been prosecuted if they had settled the matter, effectively made the crime one for failure to make satisfaction for the debt and was unconstitutional.

■ Subsequent to the *Ohnstad* decision, the Cass County States Attorney's Office notified local merchants that the states attorney's office would no longer send out notices of dishonor and encouraged the merchants to send the notices. At no time did the states attorney's office inform the merchants that sending a notice of dishonor was a prerequisite to a criminal prosecution. Also, there was testimony that the states attorney's office would prosecute a bad check writer under Section 6–08–16 regardless of whether or not a notice of dishonor has been sent or payment has been made. In fact, the states attorney's office continues to prosecute a bad check writer who, after criminal proceedings were initiated, pays the debt.

Section 6–08–16(4) provides that notice of dishonor may be mailed by the holder of the check upon dishonor. Further, Section 6–08–16(5) provides that the receiver of a bad check may present the check to the states attorney for prosecution. Accordingly, a merchant is permitted to send a notice of dishonor and it is left entirely to the discretion of the merchant whether or not the dishonored check is presented to the states attorney for prosecution.

■ The dissent relies on an agency or instrumentality theory where a private individual may become an agent or instrument of the State. There is no indication in the record that the agency argument was raised in the court below. In fact, counsel

---

**3.** Rule 11(a)(2), N.D.R.Crim.P., provides as follows:

"Conditional pleas. With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he must be allowed to withdraw his plea."

for Schmitz acknowledged during oral argument that the agency or instrumentality theory was not presented to the trial court and was being raised for the first time on appeal. This Court has stated many times that an issue or contention not raised or considered in the trial court cannot be raised for the first time on appeal. *See, e.g., State v. Brown,* 420 N.W.2d 5, 7 (N.D. 1988); *State v. Jones,* 418 N.W.2d 782, 783 (N.D.1988); *State v. Manke,* 361 N.W.2d 247, 249 (N.D.1985); *State v. Ronngren,* 361 N.W.2d 224, 231 (N.D.1985). Furthermore because the issue of agency was not raised in the trial court, neither side has marshaled evidence on which to determine whether or not such a relationship existed. Therefore, the agency issue is not properly before this Court and will not be considered.

We do not believe that the facts of this case establish that the selection of Schmitz for prosecution was invidious or in bad faith. We therefore conclude that under the circumstances in this case the facts do not prove Schmitz' selective prosecution claim.

For the foregoing reasons, the appeals of Matthews, Walther and Monson are dismissed and the judgment of the trial court in the Schmitz case is affirmed.

ERICKSTAD, C.J., and MESCHKE and VANDE WALLE, JJ., concur.

LEVINE, Justice, concurring and dissenting.

Under the present practice in Cass County, violation of NDCC § 6–08–16 remains a crime of failure to make satisfaction of a debt and the practice is therefore unconstitutional. I therefore dissent from that part of the majority decision that affirms the conviction of Schmitz.

In *State v. Ohnstad,* 392 N.W.2d 389 (N.D.1986), we held that the practice of sending a notice to a bad-check writer and prosecuting, in effect, only those who did not pay after receiving notice was unconstitutional. We recognized that what was being done was no different than what was provided for in the statutes that we held to be a violation of equal protection under the

fourteenth amendment to the United States Constitution in *State v. Carpenter,* 301 N.W.2d 106 (N.D.1980); and *State v. Fischer,* 349 N.W.2d 16 (N.D.1984), namely, making payment an affirmative defense so that the crime was one for not paying rather than one for writing a bad check.

In *Ohnstad* the evidence was that 95% of those prosecuted in Cass County were individuals who did not pay the amount of the check after receiving notice to pay up or face prosecution. In this case, the state's attorney declined to give a percentage but candidly admitted that the "vast majority of cases prosecuted were against those who received notice and did not pay." Nor had he personally ever charged a person who had paid. He testified that his office had attempted to place "more of a burden on the local merchants to be more and more restrictive in the manner in which we allow them to prosecute that multitude of potential bad checks through our office." He conceded that only a small percentage of the 1200 bad-check cases annually prosecuted involved those who had not received a notice. It seems clear to me that NDCC § 6–08–16 is still being enforced against those who do not pay just as it was in *Ohnstad.* In Cass County, payment remains an affirmative defense and the crime remains one for not paying a debt rather than one for writing a bad check.

The only difference between *Ohnstad* and this case is that in response to *Ohnstad,* the Cass County state's attorney directed local merchants to send out the notices themselves. The question becomes whether the state's attorney's reliance on local merchants makes the present practice constitutional. I think not.

As a framework for my analysis I rely on fourth amendment search and seizure cases, where a private citizen may become an agent or instrument of the state so as to make private conduct subject to the federal constitution's limitations on state action, in particular, the fourth amendment. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Whether such agency exists depends on a variety of factors including: 1) whether the state directly or indirectly encouraged or partici-

pated in the challenged conduct; 2) whether the state, knowing that the challenged conduct was occurring, did nothing to prevent it; 3) whether the challenged conduct was intended to assist law enforcement officials or to further some other end; and 4) whether law enforcement officials themselves could have undertaken the conduct without violating the defendant's fourth amendment rights. *State v. Coy,* 397 N.W. 2d 730 (Iowa 1986), *reversed on other grounds, Coy v. Iowa,* — U.S. —, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). *See also United States v. Feffer,* 831 F.2d 734 (7th Cir.1987); *United States v. Koenig,* 856 F.2d 843 (7th Cir.1988); *State v. Mathews,* 216 N.W.2d 90, Syl. 12 (N.D.1974).

As to the first two factors, the testimony unambiguously establishes that, following *Ohnstad,* the Cass County state's attorney's office required and expressly encouraged the merchants to send out notices before prosecution would be undertaken. The state's attorney's office held a meeting for merchants where sample notice forms were provided and merchants were "strongly encouraged" to send out notices before complaining of a statutory violation. One representative of a merchant testified that she had attended an informational meeting conducted by the state's attorney's office on the procedures and was informed that "we'd have to send out the notice first." When asked if there had ever been a bad check prosecution where there was no notice sent, she replied, "Not to my knowledge." Merchants believe they have to send the notice in order for the state's attorney to prosecute. The record amply demonstrates that the state directed, encouraged and promoted the merchants to send out notices as a condition precedent for filing a criminal complaint.

Under the third factor, the conduct of the merchants in sending out notices was intended to assist law enforcement. The state's attorney testified that "[w]e didn't have sufficient prosecutorial resources to be able to prosecute individually every single bad check that was written." Consequently, the state's attorney's office "encouraged" the merchants to send out the notices, concluding "it would help them and it would help us."

Finally, the government cannot knowingly encourage a private citizen to engage in activity which the government is prohibited from pursuing where that citizen has no motivation other than the expectation of reward for his efforts. *See United States v. Walther,* 652 F.2d 788, 793 (9 Cir.1981). In *Ohnstad,* the major problem with the enforcement of § 6–08–16 was that after notice has been sent, "over 95 percent of the persons charged with a violation of § 6–08–16 are people who have received the notice but who have not paid the check, and . . . in most cases they would not have been prosecuted if they had paid the check. . . ." *Id.* at 392. While the state's attorney's sending out notices demanding payment was not the major problem in *Ohnstad,* it clearly contributed to the problem and in that limited sense may be viewed as activity which the government is prohibited from pursuing. The merchants' reward for abiding by the policy to notify bad-check writers to pay up or face prosecution was the opportunity to enlist the prosecutorial arm of the government to enforce collection of the merchants' unpaid debts.

I believe that application of the relevant factors to the evidence indicates an agency relationship and that, therefore, the practice of prosecuting only those who do not pay is as unconstitutional now as it was in *Ohnstad.* The merchants are not private actors to whom the fourteenth amendment does not apply. They are instrumentalities of the state. The state's attorney, in applying a fixed policy of prosecuting only those who do not pay, is deliberately selecting an unjustifiable standard which we have held to be unconstitutional. *State v. Ohnstad, supra; see also State v. Carpenter, supra.* The fact that the prosecutor has enlisted the aid of the merchants to carry out this impermissible policy does not validate the practice.

I would reverse the judgment of conviction in the Schmitz appeal.